## No. 1,348.

### CLEMENT YOUNG vs. STEPHEN GAY.

An amended answer which does not contradict or vary the allegations in the original answer, but only elaborates them, should be allowed to be filed, although offered on the day set for trial but before the case is called.

Where a contract of lease is entered into and the parties in said lease also stipulate as to the manner of the cultivation of the place, and the lessor, by his duly authorized agent, makes no objection to the acts of the lessee, although authorized by the lease to do so, it will be too late to raise objections after the crop has been made.

The lessor who causes the lesser to leave, through his acts in violation of an agreement, and gathers and markets the crop, is responsible to the lessee for his portion.

APPEAL from the Twenty-first District Court, Parish of Iberia. *Mouton, J.*

### *Breaux & Renoudet* for Plaintiff and Appellant:

1. An owner who has entered into a contract to have his plantation cultivated, cannot break the contract without reference to acquired rights.
2. He cannot expel the person with whom he has contracted, and disregard the terms of the contract requiring that the labor of the one and the money advanced by the other shall be secured by the crop, at the time that the one who has promised to make advances shall see proper to recall his promise.
3. The proprietor or his agent being present all the time, he should have placed the plaintiff *in mora*, if there was a passive violation of the contract.
4. There was not any violation of contract; but if there was, it was passive; it was a failure to carry out the idea of intensified cultivation, such as defendant in October of the year 1887, concluded he preferred. Civil Code, 1911 and 1933; Berard vs. Boaqui, 30 Ann. 1126.
5. In any event, it was not possible rightfully to take plaintiff's interest in the crop, and absorb it with extravagant expenditures.
6. The value of crops in October can easily be established. It devolved upon the defendant to make an attempt to establish its value. The expenses made after the 6th of October are extravagant and unreasonable. They consist of charges not identified with any work on the place in connection with taking off the crop.
7. The cost of making sugar is much less than charged, as establishhd by the testimony of six witnesses.
8. The defendant's plea is reconvention, and the judgment recovered on that plea is entirely illegal.

### *T. D. Foster* for Defendant and Appellee:

1. When a case turns on facts, the judgment of the judge *a quo*, who heard and saw the witnesses, and had the best opportunity of testing their verity, will be affirmed, unless it is manifestly erroneous. 39 Ann. p. 20; 31 Ann. 430.
2. This rule applies even when the evidence is contradictory and the case turns on facts. 13 L. R., p. 463; 23 Ann., p. 253; 39 Ann., p. 610; 37 Ann., p. 655; 39 Ann., p. 929.
3. In settling accounts between parties, courts cannot reject the itemized accounts of one of the parties and consider expert testimony for the purpose of ascertaining the *quantum meruit*. 36 Ann., p. 213, Spencer vs. Cullom.
4. In actions for the recovery of damages, plaintiff must make his case clear, positive and absolute, by preponderance of testimony, in order to recover, 18 Ann., p. 646; Louque's Digest, p. 245, XIII (a) Nos. 2, 3, 4, 5.

The opinion of the Court was delivered by

MCENERY, J. The plaintiff leased a plantation from the defendant, and alleges that he was forcibly ejected from the same, and brought this suit to recover the sum of $5512 50, which he alleges is due him under

the agreement entered into by him with defendant, and contained in the contract of lease.

The defendant denies the allegation of plaintiff's petition, alleges violation of the contract of the lease by plaintiff, in consequence of which he has suffered damages to the amount of $5000, which he pleads in reconvention. He claims for advances made to plaintiff the sum of $1535 75, and on a balance of settlement the sums of $1322 90 and $222.

An amended answer was filed by defendant and objected to by plaintiff on the ground that it changed the issues raised in the original answer and changed the judicial admissions in the original answer, and that it was filed too late after the case had been assigned for trial.

The amended answer in no way contradicts the allegations in the original answer, but elaborates them, and as it was not calculated to cause any delay in the trial the judge *a quo* properly admitted it to be filed. This is the only exception in the record to which our attention has been called. The others are to the admission of testimony, and we are of the opinion the rulings of the district judge were correct. The testimony was clearly admissible under the allegations in the answer.

The contract of lease between plaintiff and defendant is as follows:

" Articles of agreement made and entered into this 12th day of January, 1887, between Stephen Gay, of the parish of Iberia and State of Louisiana, party of the first part, and Clement Young, of the parish of Iberia and State aforesaid, party of the second part, as follows : The said Stephen Gay has this day rented to the said Young about 300 arpents of land, or as much as he is able to cultivate, on East Belle Grove plantation, on shares as follows : The land now in cultivation, west of the lower levee, and the use of the pasture on the north and south side of the wind mill, pasture for the pasturage of the mules, &c.; and all the houses on the south pasture except the house occupied by Jules Bertello, and all the cabins except three in the north pasture, also the sugarhouse for manufacturing the cane raised on Belle Grove plantation, save and except the purgery, which is reserved for the storing of said Gay's agricultural implements, also the cabin near the sugarhouse; also the right to cut wood east of the lower levee for the sugarhouse, and use of himself and hands living on the place. This contract is for the term of one year from the 1st day of January, 1887, but may be continued from year to year by the consent of both parties, indorsing the same on the back of this agreement and signing same."

" In consideration of the written agreement on the part of the said Gay, the said Clement Young agrees to take charge of said land and

cultivate the same in a good and farm like manner in cane and corn, to live on the plantation and to devote his time and service to the best interest of the place, to put and keep the fences, ditches and houses in good repair, keep the animals out of the field at such times as they may injure the crops or land; and he further agrees to put not less than one bushel of cow peas in each arpent of corn that they may plant on said place, and to put such fertilizers in the stubble as they may think necessary to make a good crop. He further agrees to employ good and experienced men for engineers and sugar boilers. To use the sugar house only for the cane raised on Belle Grove, unless by consent of said Gay, and it is further understood that neither party is to keep hogs on the place running at large, if kept they are to be penned. And it is further mutually agreed that the said party of the second part agrees to return to the said Gay fifty arpents of fall plant cane, it being the same amount received from him * * * * to be planted in the fall, and not less than two cane seed, thick; also to return to the said Gay, well drained and ditched, all the stubble that may be on the place.

" And the said Clement Young agrees to deliver to the said Gay at the refinery or warehouse, as rent, one equal fourth part of all the sugar and molasses of average quality made from the cane raised on said plantation from time to time as the same is manufactured at the refinery of S. & S. R. Gay and ready for market, and one-fourth of all other crops made on said plantation by the party of the second part.

" And it is further understood that S. & S. R. Gay's refinery is to manufacture the syrup into sugar for the party of the second part at one cent per pound, and furnish sugar and molasses barrels free of charge to the party of the second part, who is to deliver the syrup from the sugar house to the refinery, and after the same is manufactured to be shipped at such time as may be thought best, in the name of said Gay; and the said Young further agrees that the one cent a pound for manufacturing may be collected as charges by the said Gay from the boat that they may ship the sugar and molasses on belonging to said Young; also any other indebtedness by him to the said Gay may be collected from the shipment of sugar and molasses as charges from the steamers.

" The corn and hay raised on the place is intended for feeding the mules, but should there be more corn or hay raised than the mules require, the surplus is to be divided at the termination of the rental, one-fourth to the said Gay, and three-fourths to the said Young. The said Young has this day received from the said Gay nineteen mules, seven carts, eight plows and double and single trees, also grains, etc., as per inventory and prices of mules. In case of loss by death or other

causes it is to be paid said Young to said Gay at the time the sugar is shipped or sold by the said Gay. In case of death or loss by charbon or glandeos, the said Gay agrees to relieve said Young from the payment of said loss. The said Young acknowledges the receipt of 169 barrels net corn in schucks, which he promises to return to said Gay at the end of the term of the lease; also six loads of pea hay that he now receives from him. Said Young further agrees that he will return the houses, fences and ditches, barnes, stables, etc., in as good condition as he now receives them from said Gay. The mules are to be well fed on corn and hay. The carts, plows and gear are to be kept under shelter as far as practical, and all to be returned to the said Gay in as good condition as when received.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

It is further agreed that said Gay will furnish said Young for the running expenses of said plantation $200 each month, commencing on the first day of March, 1887, and ending on the first day of November, 1887, which is to be paid back to the said Gay with 8 per cent interest by the first day of January, 1888, or as soon as the sugar and molasses are sold. The above loan is on condition that from month to month the prospect for a good crop of sugar cane is fair and from causes that we could not foresee should prevent the said Gay from obtaining themoney. In that case there is no blame or cause of action against him. The money that the said Gay advances is for paying hands, purchasing corn and feed for mules and purchasing peas to plant. And it is mutually agreed that said Young will consult and advise with the said Gay in the cultivation and management of the plantation, and in his absence, will consult and advise with his son, S. R. Gay, who is authorized to act for him in his absence.

"The said Gay further agrees to let the party of the second part have, in addition to the within mentioned money, $100 for current expenses about the 1st of February next, on same conditions.

"In case of the failure of the said Gay to furnish the money that he has agreed to loan the said Young, the crop, as far as worked, will be equally bound to the said Young and Gay as far as money advanced and work on the place has progressed."

Under this contract of lease and the agreement in relation to the cultivation of the place, the plaintiff went on the place and cultivated it, raising a crop of cane and corn. It was an indifferent crop, not as good as the crops in the neighborhood. The drainage was bad, not having been kept in good condition by the lessee, and there is conclusive

Young vs. Gay.

showing that the mules were not kept in the best condition, and that there was an insufficient amount of labor employed by the lessee.

The contract specially stipulates that the defendant should jointly with the plaintiff control the management of the place, and in his absence his son, S. R. Gay, was made his agent for this purpose. The agent, in the absence of his principal, the defendant, was on the place, had an opportunity of observing its management, the manner of its cultivation, the number of hands employed, and, from month to month, the prospects of a fair crop. He did not avail himself of the stipulations of the lease. He gave no advice, and apparently took no interest in the cultivation of the place. During the most critical periods of cultivation and management he remained silent, and thus approved of the acts and the management of the lessee.

It was only after the crop had been made on the place that any objection is urged to the mode of cultivation, the defective drainage and other violation of the contract by the lessee. When preparations were being made for taking off the crop of sugar the defendant refused to advance $200 per month to the lessee. The advance was to cease on the 1st of November, and on the 1st of October he refused to advance the $200 per month as stipulated in the contract. It is true that the defendant offered to pay the current expenses of the plantation on plaintiff's orders, but this was not the contract as agreed to between the parties.

There is a conflict of testimony in the means used to eject the plaintiff. It is certain, however, that he left the place, and the reason therefor was the failure of the defendant to advance according to the stipulations in the contract. He says it was for the purpose of getting money to take off the crop. It was on this return to the place that the alleged violence is said to have been resorted to. He was the lessee of the place, and he had the undoubted right to return to it, and to remain on it until the expiration of his lease, to protect his interest. The failure on the part of the defendant to supply him is not justified by the terms of the contract. There were two contingencies in the contract providing for his withholding the monthly advances — the first was on the unfavorable conditions for a fair crop. This had passed, and no objection had been made on account of a want of fair crop prospects. The other was the inability of the defendant to get the money. The refusal to advance the money on the 1st of October, when the crop had been made, was arbitrary.

The contract stipulates that on the failure of the defendant to furnish the money, the crop, as far as worked, should be equally bound to the

said Young and Gay, as far as money advanced and work done on the place.

At the period when the advances were refused, it was, according to the testimony in the record, practicable to make an estimate of the value of the sugar crop on the place.

The plaintiff owned his three-fourth interest in the crops, less what he owed defendant for advances made, and he had the undoubted right, after paying for advances, to take it off and sell it, or sell it in the field. The defendant took possession of the entire crop and he must account to the plaintiff for his interest.

Several witnesses value the cane as standing in the field. But as the defendant appropriated the crop, ground it and sold it, we presume he did so economically in order to increase his own interest. It will, therefore, be more accurate to take the net proceeds of the crop as a basis for distribution.

Under the terms of the contract the plaintiff is entitled to three-fourths of the crop and the defendant to one-fourth for rent.

The net proceeds of the sugar crop was $4789 71, three-fourths of which, $3592 29, the plaintiff is entitled as his portion of said crop. There were remaining on the place 587 barrels of corn, valued at seventy-five cents per barrel, and after deducting 169 bushels advanced to the plaintiff and to be returned by him, the value is $313 50, three-fourths of which belong to the plaintiff, $235 13, amount due the plaintiff, from his three-fourth interest in the crops, $3905 79, to be credited with $1732 11, amount of money advanced to the defendant, leaving a balance of $2173 68, to which the plaintiff is entitled.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be set aside, avoided and reversed, and it is now ordered that there be judgment for the plaintiff against the defendant for said sum of $2173 68, with five per cent interest from judicial demand, and that the reconventional demand of defendant be dismissed, defendant to pay costs of both courts.

## ON APPLICATION FOR REHEARING.

POCHÉ, J. We have carefully considered appellee's earnest application to re-open this case, and we adhere to our previous construction of the contract which underlies the litigation, and to the views which we had taken and expressed as to the obligation of the defendant to account to plaintiff for his share of the crop raised by him on the leased plantation, as a result of defendant's unjustifiable violation of the contract.

But without re-opening the case for rehearing we feel constrained to

correct an error which we made in the adjustment of the accounts between the parties.

This error was superinduced by the statement in the district judge's opinion that the nett proceeds of the sugar crop amounted to $4789 91. On closer examination of the record we find that he meant that amount to be the nett proceeds after deduction of the expenses incident to the shipping and selling of the crop only, and that there were no nett proceeds after deducting the costs of cultivating and grinding the cane. Under the legal effect of the contract, plaintiff was entitled to three-fourths of the crop as it stood at the time that an end was put to the contract by the acts of the defendant as stated in our previous opinion, subject to his indebtedness to the defendant for money and supplies advanced to him by the latter.

From the preponderance of the evidence we find that the plant cane was worth $40, and the stubble $25, an acre, as the crop then stood in the field, and that there was corn of the value of $313, liable to division under the terms of the contract.

We, therefore, recast the account between the parties as follows:

Fifty acres of plant cane at $40 per acre .................... $2,000 00
Seventy-five acres stubble cane at $25 per acre .............. 1,875 00
Corn on hand for division, valued at ........................  313 00

Total value of crops ................................. $4,188 00
One-fourth accruing to defendant .......................... $1,047 00

Three-fourths representing share of plaintiff ................. $3,141 00
Less amount of his indebtedness to defendant ............... 1,732 00

Net balance accruing to plaintiff ..................... $1,409 00

It is, therefore, ordered that our previous decree be amended so as to reduce the amount allowed to plaintiff from $2173 68 to 1409 00, and that as thus amended our said decree remain undisturbed.

Rehearing refused.