(45 South. 268.)

No. 16,630.

MUSCARELLI v. HODGE FENCE & LUMBER CO., Limited.

(Dec. 16, 1907.)

1. MASTER AND SERVANT—PERSONAL INJURIES —CONTRIBUTORY NEGLIGENCE.

The testimony does not sustain the defendant's contention that plaintiff negligently exposed himself at the moment of the accident.

2. TRIAL—INSTRUCTION TO JURY.

The defendant had no right to instruction to the jury by the judge on an assumption of facts not sustained by the testimony.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Master and Servant, §§ 420–435.]

3. MASTER AND SERVANT — EMPLOYER'S RESPONSIBILITY.

The master must provide a reasonably safe place for the work of his servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 171–179.]

4. SAME—DEFECTIVE CONSTRUCTION.

The pipe, in view of the construction, was defective and exposed the workman to injury.

5. SAME — EMPLOYER LIABLE—CONTRIBUTORY NEGLIGENCE.

Employé not negligent if he does not see danger that is latent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 706–722.]

6. SAME—EVIDENCE—PATHWAY.

The employé followed the usual passageway to the mill.

7. APPEAL—DAMAGES—AMOUNT.

Some weight given to the amount of damages found by the jury.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by Dominico Muscarelli against the Hodge Fence & Lumber Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Paul Ambrose Sompayrac, for appellant. Robert Raymond Stone, for appellee.

BREAUX, C. J. Plaintiff sued the defendant for damages in the sum of $5,000 for personal injuries he alleged he suffered in an accident on the 20th day of July, 1906, at defendant's sawmill, situated on the banks of the Calcasieu, in the city of Lake Charles.

He was employed by the defendant company at its lath machine in binding laths. He was at some little distance from the mill, which had stopped for dinner between 12 and 1 o'clock on the day of the accident. At 1 o'clock the mill resumed operations. The whistle blew, warning the workmen to return to their work. The plaintiff, returning

to his work, passed in an alley between the boiler and engine room, or building, and the banks of the river.

This, it appears, is the passageway which others of the employés used, although it also appears that there are other passageways for workmen going to and coming from the hydrant. It further appears that, for the convenience of those walking in this passageway, planks are laid over and across several pipes that are about 15 feet from the engine and boiler house.

Plaintiff, who was running, after having taken dinner, a slow run, stopped at the well for a drink of water. It was after drinking that he ran through the passageway, necessarily over the pipes, to get to his work. It was then, as he thus ran and while near the boiler, that the steam was suddenly discharged from the boiler into the short pipe leading from the mud drum in the direction of the bayou.

The plaintiff had been in defendant's employ at its mill about seven months.

One of the boilers, of the nest of boilers at this mill, had only a short connecting pipe, extending outside of the boiler or engine room. This pipe was about 15 feet long. While plaintiff was crossing on the boards in this passageway, suddenly, in blowing off the mud valve, the steam and hot water rushed from the short connecting pipe before mentioned with great force and struck him. The result was that it burnt and scalded him. He suffered great pains. Some two months he was under medical treatment, and had to undergo painful operations in order to obtain some relief. He was stout and strong before the injury, and since, in that respect, there is a change in his appearance, although his physician testified that he is entirely cured.

Defendant does not deny that plaintiff was injured. It claims that plaintiff seeks to greatly exaggerate his injuries; besides that, he was grossly negligent and inattentive at the time that the accident occurred; that he should have seen the danger, if any there was; that he should have heard the escaping steam, and avoided the mud, which struck him as it passed from the boiler.

The judgment of the district court was for plaintiff in the sum of $500, with interest and costs.

### The Exceptions to the Judge's Charge.

The judge's instruction to the jury stated, in substance, that a person operating a sawmill is required to exercise due care for the safety of his men, and that he should have for them reasonably safe passageways to and from their place of work, but that if a workman unnecessarily exposed himself by taking an out of the way path, he having a safe way to go to his work, he is guilty of contributory negligence and cannot recover.

The objection of defendant, through counsel, was that the court had instructed the jury, to wit: Where a passageway is commonly used with the knowledge and approval of the employer, which is at times made dangerous by the willful discharge of steam for the purpose of blowing out the boilers, the servants are entitled to warning, and if no warning is given, and a servant is injured, then the master is liable; and this is true, even where the workman may have gone by another passageway and where there was no discharge of steam.

Construing all of the judge's charge together, and the facts of the case, it is not subject to the objection urged.

The judge informs us, in his narrative, embodied in the bill of exceptions, that the passageway in which plaintiff was hurt was as commonly used as any other passageway in and about the mill. He states that his conclusion was arrived at from personal view of the place, to which he repair-

ed with the jury on the day of the trial, and also because of the evidence.

We are of opinion that the ruling should be sustained, and that the instructions were not subject to the objection urged.

The next bill of exceptions was taken to the judge's refusal to instruct the jury:

"That an employé of his own volition going to a point distant from his place of work, with no instruction as to the route to take, and failing to inquire as to what route he should take, and selecting a route with which he is acquainted, assumes all risks by selecting a dangerous route."

The judge, in his answer in refusing to grant the special charge, states:

"No application to the case on trial."

The judge's ruling could not well have been otherwise.

The next ground of objection, in the order in which they are presented by counsel for defendant, is:

"Where there are two avenues of travel, and the more dangerous one is selected, the party injured cannot recover if the injury was due to the risk incident to the route taken."

This request is subject to the same objection; that is, it has no application to the issues, the learned judge said. And we are of the same opinion, for it does not appear that before the accident there was anything to lead plaintiff to believe or suspect that the path he followed was the more dangerous.

In the next place, the contention of defendant is, by way of objection to the charge of the judge:

"That an employer is not obliged to safeguard an employé against danger known to the employé."

This, in view of circumstances and incidents, may be the law in certain cases; but it is not always law applicable, for there are relations arising between employer and workman which render it imperative to safeguard the workman. It is always the duty of the employer to bring to bear his superior knowledge and superior ability, in case of such

ability. The employer is to a reasonable extent to see with due care and attention to the avoidance of accidents as much as possible.

In the next (the last) instruction requested by the defense, which the court declined to give, was that:

"The rule of law requiring an employer to provide a reasonably safe place for an employé should be applied in cases only where the employé is injured in the performance of his work, and should not be applied when he, during the hours of recess, loiters around the premises."

The following, sustained by the facts of record, was the ruling of the judge in properly refusing to thus instruct the jury:

"Not applicable here. The employé was not loitering, as will be seen from the evidence."

### Merits.

It has already been pretty well determined that, as to safety, one way to plaintiff's work was about as safe as the other.

We will add here that the workmen of the defendant company and the officers frequently found it convenient to pass over the way which plaintiff was following at the moment of the accident. The danger came from the boiler on account of the short pipe of the one boiler, which was shorter than the pipes of the other boilers. The pipe in question extended only to the path, not beyond, and for that reason made it dangerous. This pipe should have been extended on to the stream. The owner should have seen the danger in case of the sudden discharge of steam. Accident was unavoidable, if the hot steam came in contact with any one passing.

But the contention is specially that plaintiff should have seen the danger, as he was an experienced mill hand.

We do not see the question in that light. This boiler and escape pipe were appliances of the defendant company in operating its mill. Its agents and employés had placed them in position. It devolved upon it to see that they were so placed as not to cause

injury. It is for the master to provide a safe place for the workman to work. This was not an entirely safe place, and its want of safety was, or should have been, more within the master's knowledge than the knowledge of his employé, who had the right to assume that in going to and from his work no stream of steam would suddenly rush upon him.

We do not think that there was negligence on the part of the plaintiff. The danger was not obvious to the workman. He did not have reasonable means of knowledge, because there was something having a tendency at least to mislead (however unconsciously this was to the owner). This something was that all the boilers (except the one in question from which the steam escaped) blew off their steam through longer pipes. This one, as we have seen, had a short pipe, which was not entirely safe to any one passing in the route in question. As there were safe pipes and one unsafe, it was reasonable for plaintiff to have been under the impression that they were all safe enough, and not to have thought at the time that one was different and less safe than the others. The situation, in view of this difference in the length of the pipes, was abnormal. It devolved upon the master for that reason to instruct and specially warn his workmen. On account of all this condition it was incumbent, to escape liability, for the defendant to prove that plaintiff had knowledge. This it did not succeed in doing.

Defendant proved that there was another path along the western side of the boiler house that was convenient and led directly to plaintiff's place of work, and in this respect defendant's contention is that, with full knowledge of the surroundings, he (plaintiff) took a route leading across the ends of the pipes, from which steam was frequently discharged at the hour that he passed; that plaintiff was running along in full view of the pipes, and ran into the steam.

We return for one moment to the boiler in question only to cite the following from Labatt, Master and Servant, bk. 1, p. 228:

"Turning steam pipe in dangerous direction is negligence."

Having determined that defendant is liable, we are next brought to a consideration of the amount of damages. Plaintiff in his answer to the appeal has asked for an increase. In the brief the amount asked is $1,500.

In fixing the amount of damages, the nature of the cause must be considered, the facts and circumstances, and all the features of the case.

In reference to the extent of his injuries —according to him—they were great. The middle part of his body was injuriously affected and permanently disabled. He was afraid that all his strength was lost. We infer that in this plaintiff is mistaken. He is cured, was the testimony of the physician who examined him, or gave him some medical attention, while he was sick. He has, doubtless, suffered greatly. He was confined to his bed 24 days, and was under medical treatment about 60 days. But the apprehension of plaintiff regarding his future usefulness is groundless, if we are to believe the testimony of the physician, who testified that he has recovered from his injuries and that he is now in good health.

In overruling the motion for a new trial, the judge stated that the verdict was sustained by the law and the evidence. He had gone out with the jury to the place, and satisfied himself from personal observation regarding it. He was convinced of the correctness of the verdict. It was not a mere approval for the purpose, as has sometimes been asserted in other local jurisdictions, in order that the case might sooner reach the appellate tribunal.

For reasons stated, the law and the evidence being with plaintiff, the judgment is affirmed.