**MARTIN v. TOYE BROS. YELLOW CAB CO. et al.**

**No. 16099.**

Court of Appeal of Louisiana. Orleans.

June 24, 1935.

John P. Sullivan, David Sessler, and Gordon Boswell, Trial Atty., all of New Orleans, for appellants.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an appeal from a judgment condemning George Thompson and Toye Brothers Yellow Cab Company to pay the sum of $6,000 to Arthur Martin as damages for physical injuries . sustained by the plaintiff as the result of a collision between a yellow· cab owned by Toye Bros. and driven by George Thompson and a motorcycle ridden by the plaintiff, Arthur Martin. The accident occurred on March 31, 1933, on South Peters street, near the intersection of South Diamond street, in the city of New Orleans, at about 3:30 p. m. Plaintiff, who was an employee of Meyer Bros., Inc., a corporation engaged in the sale and repair of automobile tires, was sent to the premises No. 923 South Peters street for the purpose of removing a deflated tire attached to a Cadillac automobile which was parked in front of the premises. He removed the tire and placed it in a "side car" attached to his motorcycle and started toward his employer's place of business, moving in a diagonal direction from left to right across South Peters street in the direction of South Diamond street, and collided with defendant's taxicab near the intersection.

The charges of negligence as set out in the petition are excessive speed, the failure to execute the proper turning maneuver, and the failure to accord plaintiff the right of way, all in violation of ordinance No. 13702, C. C. S., of the city of New Orleans.

The defendants denied all charges of negligence imputed to them, averring that the accident was due to the failure of the driver of the motorcycle to main-· tain a proper lookout, or to moderate its speed, and because it was driving on the left, or wrong side of the street, and "defendants aver, in the alternative, that in all events the plaintiff was contributorily negligent, which bars his recovery," and later, on the day of trial, about a year after the answer had been filed, over the strenuous objection of counsel, a supplemental answer was filed in which the charge of contributory negligence was set forth with particularity.

The first question which we shall discuss is whether the alleged contributory negligence of the plaintiff has been properly pleaded. The supplemental answer, as we have stated, was filed on the day of trial over the objection of counsel. The argument is made that the supplemental answer should have been excluded because it involved a change in the issue, in violation· of article 419 of the Code of Practice, which reads as follows: "Art.' 419. After issue joined, the plaintiff may, with the leave of the court, amend his original petition; provided the amendment. does not alter the substance of his de-, mand by making it different from the one. originally brought."

In State v. Bozeman, 156 La. 635, 101 So. 4, 6, the court, in considering a similar plea which, like the one here, was filed on the day the case was .called for trial, said, in referring to the action of the trial court in excluding the supplemental answer: "We think the ruling of the court was correct, first, because 'the amendments were tendered after the case was fixed and called for trial; * * * secondly, because the issues had been made up between the parties and could not be changed by further pleadings. * * *"

In Vicknair v. Terracina, 164 La. 117, 113 So. 787, 789, a suit by a wife for separation, the court, with reference to an amended and supplemental answer filed by defendant, expressed the following opinion: "As the allegations in the supplemental answer clearly change the issues in the case, and as defendant did not reconvene for a separation from bed and board on any ground, the trial judge's ruling rejecting the amended answer is correct,

in our opinion. C. P. arts. 419, 420, 421; Lampton v. Bank, 41 La. Ann. 719, 6 So. 547; Young v. Gay, 41 La. Ann. 758, 6 So. 608."

See, also, Edwards v. Monahan et al., 10 La. App. 41, 120 So. 881; Jordan v. Checker Cab Co., Inc., 10 La. App. 132, 120 So. 426.

From a consideration of the foregoing authorities, it is apparent that the trial court should have excluded the supplemental answer.

■ We have now to consider the sufficiency of the plea of contributory negligence as set forth in defendant's original answer to the effect that "plaintiff was contributorily negligent, which bars his recovery."

In Quatray v. Wicker, 16 La. App. 515, 134 So. 313, 316, this court said:

"Counsel for Wicker complains of the ruling of the trial court in excluding evidence, which was timely objected to, and offered for the purpose of tending to show that the injured boy was guilty of contributory negligence because he knew that the driver of the truck, Michel Wicker, Jr., was a fast driver. This evidence was excluded by the trial court on the ground that a mere allegation in the answer that the plaintiff's son was guilty of contributory negligence is simply a conclusion of law, and that, in order to properly plead contributory negligence, it is necessary to set up such facts relied upon as constituting contributory negligence.

"The defendant Wicker in his answer merely alleges: 'Further answering, your respondent pleads contributory negligence in the event it is found that the driver of the Wicker truck was in any way guilty of negligence, which is specially denied.' We are of the opinion that the trial court's ruling is correct."

In Kernstock v. City of New Orleans, 147 So. 371, 373, we said: "To charge contributory negligence is to charge a conclusion of law and, unless there are alleged facts from which the legal conclusion may be drawn, then the charge may as well not be made."

We conclude, on this point, that contributory negligence has not been properly pleaded.

The case must be determined from the standpoint of the negligence, vel non, of the driver of the taxicab.

■ Article VI, sec. 3, subsec. (a) of the traffic ordinance, No. 13702 C. C. S., of the city of New Orleans, reads as follows:

"3. Turning at intersections.

"(a). Right turns.

"The operator of a vehicle intending to turn to the right of an intersection or into an alley or driveway shall approach the point of turning in the traffic lane nearest the right hand edge or curb of the roadway; giving the proper hand signal indicating his intention and in turning at a speed not to exceed ten miles per hour shall keep as close as practicable to the right hand curb or edge of the street."

Article VI, sec. 5, subsec. (a) reads:

"5. Turning corners.

"(a). A vehicle turning into another street to the right, shall first give a proper hand signal indicating his intention and shall turn the corner as near the right hand curb as practicable, at a speed not to exceed ten miles per hour."

Turning to the evidence in the transcript, we find that eleven witnesses testified to facts concerning the accident, but only two of them, Terrell and Marshall, who appeared on behalf of plaintiff, were eyewitnesses. The testimony given by these witnesses was in substantial accord and to the effect that at the time of the accident they had reached the corner of South Diamond and South Peters streets, after having walked along South Peters street and past the parked Cadillac car, from which a tire had been removed by the plaintiff, just as plaintiff started off on his motorcycle from behind the Cadillac (the tire had been removed from a rear wheel and the Cadillac was facing South Diamond street); that the taxicab came out South Diamond street at a speed of about 30 miles an hour, "and the yellow cab driver looked like he was going to the river instead of turning up South Peters street," but made a long turn and collided with the motorcycle on the right hand, or river side, of South Peters street, and about 5 or 6 feet from the corner of the intersection.

The learned judge of the trial court, in referring to the testimony of these witnesses, was at pains to say: "This court will state in the record that the court was thoroughly convinced of the honesty of the two negroes in testifying

and believes the testimony that they gave."

Anthony Matto, the owner of the Cadillac car, the tire of which Martin was sent to repair, did not see the accident, but heard the crash, and reached the scene of the accident immediately after the impact. He testified that the cab, after the accident, was straddling the street car rail on the river side of South Peters street, and the motorcycle near the river side curb of South Peters street.

Matthew Ross corroborated Anthony Matto.

John M. Pierce, secretary of Meyer Bros., Inc., the employer of plaintiff, reached the scene of the accident after he had been notified by phone of the occurrence. He testified that he found parts of the motorcycle carburetor and some broken glass in the street "two feet to the river side of the river side rail, about eight feet from the corner of South Diamond street."

The defendant, Thompson, the driver of the taxicab, testified that he was going very slowly, 4 miles an hour out South Diamond street; that when he reached the corner of South Peters street he started turning toward the right and into South Peters street, after having looked in the direction of the motorcycle without having seen it until within 15 or 20 feet of it. He places the point of the collision at 6 feet from the left of the lake side curbing of South Peters street, and that the impact was due to the skidding of the motorcycle. However, Thompson also testified that there was a pool of blood on the right or river side of South Peters street, and that Martin, after the accident, was carried over to the river side sidewalk of South Peters street. In the latter statement he is in accord with all the testimony on the subject.

We are convinced that the accident occurred on the river side of South Peters street, while the taxicab was in the act of and before completing the turn into South Peters street from South Diamond street. If this be true, the driver of the taxicab was guilty of a violation of article VI, secs. 3 (a) and 5 (a) of the traffic ordinance. We are also convinced that the turn into South Peters street was attempted at a speed considerably in excess of that permitted by the identical sections of the ordinance just referred to.

The situation in this case is very much similar to that considered by us in Bougon v. Volunteers of America et al., 151 So. 797, 800, in which we said:

"* * * The evidence in the record is overwhelmingly to the effect that the truck turned the corner at an excessive rate of speed, which is estimated to have been about thirty miles per hour, in violation of the city ordinance, article 6, section 5, paragraph A, which provides that: 'A vehicle turning into another street to the right shall first give the proper hand signal indicating his intention and shall turn the corner as near the right hand curb as practicable, at a speed not to exceed ten miles per hour.'

"In our opinion, the accident was caused by the excessive speed and the failure to give proper warning of the intention to turn the corner, which is also established by the evidence."

Our conclusion is that the driver of the defendant's taxicab was guilty of negligence which was the proximate cause of the accident, and that, therefore, plaintiff must recover.

■ Plaintiff, a young negro 28 years of age, suffered a compound, comminuted fracture of the left leg at the junction of the middle and lower third, necessitating its amputation below the knee. He was awarded $6,000, which we believe to be the proper amount. Danna v. City of Monroe, 129 La. 138, 55 So. 741; White v. Nutriline Mill. Co., 133 La. 870, 63 So. 385.

The Travelers Insurance Company, the carrier of compensation insurance of plaintiff's employer, intervened in this proceeding under the authority of section 1 of Act No. 247 of 1920 (page 468, amending Act No. 20 of 1914, § 7), claiming $720.80, the amount of compensation paid plaintiff at the time of the filing of this suit, in addition to a reasonable attorney's fee. The court below awarded intervener judgment against defendants for $1,143.30, the total compensation paid up to the trial, and judgment against plaintiff, Martin, for $150, as attorney's fee, payable out of the judgment in his favor against the defendants.

In this court a written agreement between counsel has been filed in the record wherein it is stipulated that in the event of judgment going against defendants, the amount awarded intervener

should be increased from $1,143.30 to $1,-383.80, plus an attorney's fee of $150.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended so as to increase the amount awarded intervener from $1,143.30 to $1,383.80. In all other respects the judgment appealed from is affirmed.

Amended and affirmed.