83 So.2d 160 (1955)
Leonidas B. HAYES, Plaintiff-Appellee,
v.
ILLINOIS CENTRAL RAILROAD, Defendant-Appellant.
No. 4063.
Court of Appeal of Louisiana, First Circuit.
October 6, 1955.
Rehearing Denied November 22, 1955.
*161 Carroll Buck, Amite, for appellant.
Joseph A. Sims, Hammond, for appellee.
TATE, Judge.
This is a suit to recover damages for personal injuries sustained by a passenger while or immediately after disembarking from defendant's railroad train. Defendant railroad company appeals from judgment awarding $4,993 to plaintiff Hayes.
Hayes, 65 years of age at the time of the accident, testified that he had ridden as paying passenger from New Orleans to Hammond on June 5, 1950, arriving at 9 a. m. Plaintiff's car stopped north of the Hammond depot and of a catwalk across the southbound tracks leading west to the depot. There was a smooth slab walkway between northbound tracks, level with the rails, but elevated about 7 inches above the roadbed. This walkway was for passengers to enter and alight from northbound trains, and it was connected with the main depot west thereof by eight catwalks across the southbound tracks.
The accident happened when (in Hayes' own words on cross-examination at Tr-18) the walkway to the catwalk "was blocked off there with suitcases, baggage, handbags", and he "fell just as soon as I [he] made a step to try to get around these handbags. They was in the road." The bags were "right, almost against the steps." He "started to try to step around them and my foot got hung up in there and throwed me over in the tracks", as a result of which he broke his left arm when it hit the raised slab walkway. Hayes testified that "plenty" of people got off at Hammond on that day, quite a few before him from the same car, and he thought some after him. He further testified that two railroad porters were standing on the walkway north of his exit from the railroad car.
The two porters testified on behalf of defendant that they remembered Hayes as a passenger who had disembarked and tripped while attempting to cross the southbound track. They testified that he had gotten up and walked away from the scene of the accident without appearing hurt.
*162 No other witnesses testified to the accident. The only other witness was a railroad supervisor testifying as to the Hammond station and traffic. By mutual agreement, medical memoranda were substituted for the testimony of physicians.
Defendant strongly urges that the testimony of its two porters is entitled to greater credibility than that of plaintiff. But the District Court specifically stated that it was "quite impressed by Mr. Hayes honesty and remembrance of the facts". Commenting on the "manner and demeanor" of the two porters compared with that of plaintiff Hayes, the District Court "had no alternative but to accept the facts as stated by Hayes", and felt that the imagination of the two porters had a great deal to do with their testimony. The appellate court, examining the cold record and two contradictory but apparently equally credible versions of an incident, is manifestly unable to determine which of the witnesses is entitled to belief, as compared with the position of the District Court, which sees and hears all the witnesses, and can observe the hesitancies, flushings, eye shiftings, etc. We must therefore accept the facts as found by the District Court, substantially that the accident occurred as related by plaintiff Hayes.
The applicable law does not seem to be disputed.
"`It is well established that a carrier of passengers is not an insurer, but it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. * * * It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault'". Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378 at page 380. See Mire v. LaFourche Parish School Board, La.App. 1 Cir., 62 So.2d 541 for a recent case summarizing some later jurisprudence and stating: "`* * * the carrier is required to do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care * * *.'" 62 So.2d 541, at page 543. (Italics ours.)
As stated at 13 C.J.S. Verbo, Carriers, § 717(2), p. 1338: "In accordance with its general duty to keep its stational facilities safe, it is the carrier's duty, subject to qualifications as to notice and opportunity to eliminate the danger, to keep the station and platform in good repair and free of defects, obstructions, and other dangerous conditions, and to prevent, and guard passengers against, any customary use of the platform which renders it dangerous." (Italics ours.)
In the comment below this subheading is the following comment:
"Subject to qualifications as to notice and opportunity to eliminate the danger, it is the carrier's duty to keep the station and platform in good repair and free of dangerous depressions or other defects; to keep the platform free from, or to remove, trucks, baggage, and other obstacles on which passengers are liable to be injured, even though the dangerous obstacles were placed there by another, such as an express company permitted to use the platform for its own purpose; to prevent, and to guard passengers against, another's customary use of the platform which renders it dangerous, such as the acts of postal clerks in throwing mail pouches on the platform from passing trains; and to prevent the creation of, or to remedy, other dangerous conditions." (Italics ours.)
And at 13 C.J.S. Verbo, Carriers, § 723, p. 1352: "A carrier is usually required to exercise the highest degree of care to avoid injury to passengers boarding or alighting from the carrier's vehicle."
See also 10 American Jurisprudence 223, Verbo, Carriers, Section 223: "Failure upon the part of a common carrier to maintain its platforms and other portions of its premises where passengers will be likely to *163 go reasonably clear of obstructions, obstacles, or other dangerous conditions will render it liable to passengers as a result thereof."
Our Supreme Court held in Hopkins v. New Orleans R. & Light Co., 150 La. 61, at page 74, 90 So. 512, at page 517, 19 A.L.R. 1362, at page 1368: "It is not within the power of a passenger to prevent either congestion of passengers on the platform of a coach or its obstruction by baskets, bundles, or other objects. This responsibility rests upon the carrier alone. It is his duty to furnish a safe and unobstructed exit from his cars to the passenger." In this Hopkins case recovery was allowed a female passenger who tripped when her skirt caught on a basket which left a small space in the vestibule by which the lady passed to alight.
It thus appears clear that the defendant carrier was negligent in not providing an unobstructed path for plaintiff passenger's exit from the train.
It is unnecessary for us to consider whether plaintiff Hayes was contributorily negligent, because defendant simply pleaded the legal conclusion that Hayes was contributorily negligent, and did not plead any facts relied upon.
The first eleven articles of the answers are general denials without any affirmative allegation of fact. The only pleading concerning contributory negligence on the part of plaintiff are the following articles of the answer:

12.
"That the sole or proximate cause of the said accident was the gross negligence and carelessness of the plaintiff.

13.
"That in the alternative if the Court should find defendant negligent in any particular, which is denied, defendant avers in the alternative that the contributory negligence of the plaintiff bars from any right of recovery herein."
It has repeatedly been held that pleading a conclusion of law that plaintiff is contributorily negligent will not, in the absence of allegations of fact relied upon, entitle the defendant to invoke the defense of contributory negligence; see authorities cited in Parker v. Home Indemnity Co., La.App., 41 So.2d 783, Martin v. Toye Bros. Yellow Cab Co., La.App., 162 So. 257, involving similar allegations of contributory negligence. Despite the fact that this Court is not in sympathy with technical construction of pleadings, and feels that with the passage of liberal discovery procedure such construction is no longer necessary to protect the parties from surprise, we are unable to disregard such well-settled jurisprudence.
The District Court did not itemize the damages awarded in the total of $4,693, plus $300 for medical expenses. However, examining the receipts in the record, it appears that $693 was to pay for additional assistance allegedly required by Hayes in performing the duties of his employment, and $4,000 was (as stated by plaintiff's counsel) for physical suffering, mental pain, and anguish, as well as for any permanent injuries sustained.
However, the petition prays for damages in the amount of $2,000 for pain and suffering, and $3,000 for "permanent injury". While the award of $2,000 for pain and suffering as demanded would not be manifestly erroneous, based on petitioner having suffered from a broken left arm, bruises and contusions on his left side, wearing a cast on his arm for two months, and suffering pain thereafter of some degree; we do not feel that the record supports an award of the additional $2,000 for "permanent injury", concerning which the only testimony is the plaintiff's statement, unsupported by any medical evidence: "I hurt myself all the way down and my left, this left leg, has been swelled ever since." (Tr-4) This award for permanent injuries would appear excessive, and it will be reduced to $500.
The special damages arising from medical expenses and from the alleged *164 payment to others to perform his services as an employee are supported only by the evidence of plaintiff himself that he had to pay such sums, corroborated by receipts for these payments identified by plaintiff and introduced as evidence. Defendant objected to this evidence and to the admission of these receipts. It appears settled that such receipts are admissible in evidence, and when identified by testimony as the cost occasioned through the tortfeasor's act, will support an award in damages, Brackvitch v. Checker Cab Company, etc., La.App., 79 So.2d 920; Bertuccini v. Toye Brothers Yellow Cab Co., La.App., 11 So. 2d 247; Laughlin v. Sullivan, 14 La.App. 491, 131 So. 687; Michel Bros. v. Mallynn, 3 La.App. 69; Hendren v. Crescent City, Seltzer & Mineral Water Company, 1 La. App. 625. But these cases also indicate that such amounts must be reasonable in conjunction with the damages occasioned as shown by other testimony, and in such circumstances the courts may hold the plaintiff in strict proof that the amounts so paid were paid as a result of the accident, see Scott v. Davis, La.App., 56 So.2d 187.
Plaintiff's employment was as night watchman and janitor at a salary of $40 per week. He testified that at his employer's insistence, he continued to report to work, but that it was necessary to pay $693 to others to perform his duties for him between June 9, 1950, and January 16, 1951. Due to the testimony that his arm was in a cast and that he was not discharged by defendant's doctor until August 1, 1950, (the accident having occurred on June 5th), and plaintiff's testimony that he suffered some difficulty in working for several months thereafter, we will except as proven damages of the sum of $165, evidenced by receipt, paid to a cleaning woman for 11 weeks at $15 per week. The other receipts in the amount of $528 covering from June 9, 1950, to January 16, 1951, and being marked as payment for "labor", allegedly paid to co-employees for their assistance to Hayes in "controlling the place", we will not allow in the absence of any other explanation or other testimony that it was necessary to pay these sums due to disability resulting from the accident.
Similarly, introduction of the receipt for dental services in the amount of $150 with the admission by plaintiff that only "some part of it" was for repairs to dental plates occasioned by the accident, does not prove this item of damages or any portion of it, at least without any further explanation in the record.
We will accept the receipts for $15 x-rays and $35 glasses, totalling $50, which he testified were positively paid and as a result of injuries or damage sustained in the accident.
For the reasons above stated the judgment herein is amended to reduce the award to $2,715 in all, together with legal interest thereon from judicial demand until paid; and as amended, judgment in favor of plaintiff-appellee is herewith affirmed. Plaintiff to pay costs of this appeal; costs below to be paid by defendant.
Amended and affirmed.
ELLIS, J., not participating.