(35 South. 643.)

No. 14,813.

BROADFOOT v. SHREVEPORT COTTON OIL CO.*

(Dec. 14, 1903.)

INJURY TO EMPLOYÉ—CONTRIBUTORY NEGLIGENCE—SAFE APPLIANCES.

1. The action was one sounding in damages for injuries received in defendant's oil factory.
2. One in the performance of work under the sanction of his employer is not at fault if the

*Rehearing denied January 18, 1904.

manner resorted to in doing this work is similar to that frequently followed by other workmen.
3. There is an implied promise by the master to make all appliances safe, and to furnish all necessary appliances.
4. The "safety collar" on the driving shaft was broken, near which plaintiff undertook to put the belt on the pulley. The weight of the testimony traces the cause of the accident to the broken "safety collar."
5. There was no resting place, as there had been prior to the accident, upon which to stand while pulling the belt on the pulley of the running shaft.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by R. M. Broadfoot against Shreveport Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

William Henry Wise, Edward Beverly Herndon, and Clegg & Quintero, for appellant. Thatcher & Welsh and Thigpen & Foster, for appellee.

BREAUX, J. This is an action brought by plaintiff to recover damages for injuries received by plaintiff while at work at defendant's oil mill in January, 1902.

The amount of damages claimed is $10,000.

Plaintiff is a carpenter and millwright, and was employed by defendant to work at its oilmill.

The foreman of the screenroom and an employé of defendant company asked plaintiff to assist him in pulling a belt on a pulley. This pulley was near the east wall of the screenroom.

It was while at this work of pulling on the belt that his clothing was caught by the fast revolving shaft on the "safety collar" on the shaft, and he was taken from the prop or stay on which his feet rested, and was made to whirl around the fast revolving shaft a number of rounds, and then hurled off a distance of about 15 feet.

The prop or stay just before mentioned, on which he was standing, was about 12 feet above the floor of the room.

The superintendent having asked the plaintiff to put the gauges on the oil tank, he was on his way to comply with the direction when

called upon by the employé in charge of the screenroom.

The evidence shows it is not unusual to call upon some one to assist in putting on this belt. The weight of the testimony shows that the superintendent had authorized this employé in charge of the screenroom to call plaintiff when necessary to assist him in putting on the belt.

One of the flanges of the "safety collar" was broken just opposite the set screw which was in the safety collar.

The function of the safety collar is to protect persons from being caught by the set screw, the head of which was about one-half inch above the surface of the ring in which is this screw.

The foregoing is a statement of the facts upon which plaintiff bases his action.

The defendant sought to meet the issues by contending that the flange of the safety collar was not broken, and, further, that if it was broken the workmen upon whom it devolved to put on the belt were not exposed to greater danger by the asserted break in this flange. Defendant's contention, further, is that if there was negligence on its part, which it does not admit, it was, it says, the negligence of a fellow servant, and that, in addition, plaintiff was guilty of contributory negligence.

The jury returned a verdict for plaintiff in the sum of $2,000. The trial judge refused to grant a new trial. From the verdict and judgment, defendant prosecutes this appeal.

Before this court, appellee answered the appeal, and asked for an increase of the damages allowed him by the lower court.

Before taking up the issues of law, we should state, as to the facts, that, shortly after the accident, plaintiff was taken to the Sanitarium at Shreveport; physicians were called, to whom he gave some account of the accident, and stated that his clothing was caught in the screw of the safety collar.

That he was pulling the belt from the wrong side of the shaft, and that he was doing the work for some other man.

On the trial of the case it was explained by the testimony that, in pulling the belt on the pulley, the plaintiff and those who were with him did just as others had done frequently in putting on belts.

It is also a fact brought out by the testimony that the plaintiff and a negro helper were on a ladder some 10 feet from the floor. The manager of the screenroom, upon whom it more particularly devolved to put on the belt, was standing on the floor of the screenroom.

Plaintiff failed to put on the belt from the position in which he was on the ladder. He left it; passed over the belt to or up to the wall. The negro helper said to him that there was danger.

After he had thus crossed the belt, plaintiff had one foot on a plank, and the other on a piece of board lashed to the wall.

The contention on the part of defendant here is that the position in which plaintiff placed himself to work was hazardous, and that there was no occasion to thus expose himself. The testimony further shows that plaintiff had on, when his clothing was caught by the machinery, a workman's overall.

S. H. Gamble, the employé who had charge of the screenroom, and to whom we have before referred, testified that the superintendent of the mill had instructed him to call in an employé when necessary to put on the belt; under that instruction, he called on plaintiff and others to assist him. He states that plaintiff stood where others stood before and after the accident in putting on the belt; that the safety collar was broken—there was a break in one of its flanges—and if any one went against it there was danger that the screw would catch the clothes of any one placing himself too near for safety; that it made the work of putting on the belt more hazardous; that the purpose of a flange was to protect any one going near the shaft.

The smooth surface of the shaft will also catch the clothing of any one standing too near, but that the broken flange made it more dangerous.

The testimony of this witness is corroborated by a number of others. The weight of the testimony impresses us as sustaining his statement as a witness.

From this state of facts, it devolves upon us to decide the question at issue.

We have not found it possible, after having carefully considered the testimony, to ar-

rive at the conclusion that plaintiff was careless.

He sought to do the work from one side of the pulley, which perhaps was usual, but, as he could not put it on, he went to the other side, which was not particularly dangerous. Others had done the work from the left of the belt, which defendant insists was dangerous.

The utterance of the negro helper about danger is not enough to fix on plaintiff the negligence or responsibility of having unnecessarily exposed himself.

Whether he meant that there was danger in leaving the ladder and crossing to the wall as plaintiff did, or in the attempt to do the work after having crossed to the wall, is not explained by the negro helper.

The witnesses who sustain the preponderance of testimony do not seem to have considered the position of plaintiff as especially dangerous.

It is true that in thus passing he came nearer the safety collar before mentioned. We infer that, if it had not been broken, it would not have been dangerous. Its purpose is greater safety, but it is no longer safe when broken.

One of defendant's employés testified that he had seen it in its broken condition before the accident. He did not inform defendant's representative of the fact.

In passing from one side to the other, and undertaking that which had been done by others, it does not appear that there was negligence in endeavoring to put on the belt as he did.

It brought him in touch with the safety collar. This collar would in all probability have been in good order if there had been any inspection made by the one in charge. The employers should have the machinery inspected from time to time.

Under the circumstances here, the master knew, or must be held to have known, of the defect.

It was known by some of the employés, and would have been known by the master if the one in charge had given this part of the machinery reasonable attention.

Moreover, a platform at one time prior to the accident had been erected, which, as we understand, facilitated the work of putting on this belt, and lessened the danger. After the accident there were additions made in the way of a platform which facilitated the work.

It is true that defendant sought to discredit the usefulness of these platforms, and sought to show that they only increased the danger. Considering the entire statement of the witnesses in this connection, we have concluded that it sustains plaintiff's contention as supported by a preponderance of testimony on this and other points where there is divergence or disagreement regarding the facts, as to which the jury and the judge of the district court are the judges.

Under the circumstances detailed by the witnesses, and under the facts found by the jury and the judge, we arrive at the conclusion that the safety collar was broken, and that there should have been a platform on which to stand. And lastly we conclude, in regard to this accident, that it is reasonably certain that, in pulling at this belt, plaintiff touched the safety collar, and then his clothing became entangled, and he was made to revolve and was thrown as before mentioned.

With reference to the law bearing upon the issues, the weight of well-considered treatises on the subject set forth that there is an implied promise by the master to make appliances safe, and, in the second place, to furnish all necessary appliances. Personal Injuries, Buswell (2d Ed.) p. 371.

"It is the duty of the master to furnish his servants with safe implements and appliances." 2 Eng. & Am. En. of Law, p. 431.

With reference to the fellow-servant plea, the testimony does not disclose that the accident can be laid at the door of any one of the employés who ever were fellow servants of plaintiff.

The order came from the superintendent, who had complete supervision of the work. He had authority to employ and discharge the plaintiff. He was in complete control, and therefore cannot be held to have been the fellow servant of plaintiff.

From that point of view, there is no need of citing any of the many decisions regarding the fellow servant doctrine.

There is, as we have said, no question of fellow servant here.

This brings us to a consideration of the amount of damages allowed by the jury.

Plaintiff has made application for an increase, and defendant contends that it is, in any event, excessive.

We must decline to interfere with the judgment.

The plaintiff was whirled around the fast revolving shaft. He was despoiled of his clothing by the machine, and thrown naked some distance. His leg was broken. His body was badly bruised. He suffered acute pain. He was laid up for a number of days, and was unfit for work for a number of months. We must decline to reduce the amount, and we have determined to affirm the verdict of the jury.

If, by good health and strength, plaintiff recovered in less time than usual from the injuries received, we can think of no good ground to amend the judgment by reducing the verdict.

For reasons assigned, the verdict and judgment are affirmed.

LAND, J., recused, having been judge below.