(38 South. 821.)

No. 15,460.

SMITH v. MINDEN LUMBER CO.*

(May 22, 1905.)

INJURY TO EMPLOYÉ—DEFECTIVE APPLIANCES —CONTRIBUTORY NEGLIGENCE—EVIDENCE.

1. While plaintiff, a sawyer, was in a stooping position in the narrow space 20 inches wide between the sawyer's platform and the log deck, and engaged in removing sawdust which had accumulated beneath the platform and around the levers, his coat was caught by the collar of the shaft beneath the log deck, and plaintiff's arm was broken and his shoulder dislocated. One of the screws of the collar projected about one inch beyond the rim of the collar, and one of its flanges was broken. *Held,* that the defective condition of the collar was the direct and immediate cause of the injury, that this defective condition was known or should have been known to the management, and that defendant was negligent in not furnishing reasonably safe appliances.

2. Contributory negligence is an issue of fact, and where the evidence is conflicting the finding of the trial judge will not be disturbed unless clearly wrong.

3. Where the evidence does not show that plaintiff was aware of the defective condition

*Rehearing denied June 19, 1905.

of the collar, the circumstance that he did not take precautions against an unknown danger is insufficient to charge him with negligence.

(Syllabus by the Court.)

Appeal from Second Judicial District Court, Parish of Webster; John Thomas Watkins, Judge.

Action by D. C. Smith against the Minden Lumber Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Purnell Mitchell Milner and Lynn Kyle Watkins, for appellant. Enos Howard McClendon and Stewart & Stewart, for appellee..

LAND, J. On February 3, 1904, plaintiff, a sawyer, who had been in the service of defendant company in that capacity for two years and seven months, was severely injured while working in the mill. His coat was caught by a coupling or collar on a rapidly revolving shaft. The result was a broken arm and dislocated shoulder.

Plaintiff sued for $10,000 damages. The alleged negligence of the company was the use of a set screw in the coupling longer than was necessary or proper, and not covered or protected so as to prevent contact therewith. The petition alleged that the exposed condition of the set screw was unknown to him, and was or should have been known to the agents of the company.

The answer was a general and special denial of the allegations of the petition, coupled with an averment that, if the plaintiff was injured at the time, place, and in the manner set forth, he received said injuries through his own carelessness or negligence or contributed thereto.

The case was tried before the district judge, who rendered judgment in favor of the plaintiff for $1,500 damages. Defendant appealed, and plaintiff has answered, praying for an increase in the amount awarded.

The case involves no disputed questions of

law. The issues are such as are left in other jurisdictions to the final arbitrament of juries. These issues have been decided in favor of the plaintiff by the able district judge then on the bench of the Second Judicial District. His findings should not be disturbed unless manifestly erroneous.

Plaintiff, while kneeling at work in a space 20 inches wide between the sawyer's platform and the "log deck," was caught by a coupling or collar on the revolving shaft beneath the edge of the log deck, and was in consequence very badly injured. This coupling had one screw which projected about one inch above the rim or surface, and one of the flanges was broken.

Plaintiff's clothes were caught by the set screw or broken flange. So testified a witness, who was foreman of defendant's mill when the accident occurred. This same witness further states as follows: "Those collars are absolutely safe with the proper length set screws in them."

The defendant did not produce a single witness to prove how long this collar had been in that condition. For all the evidence shows, this long screw may have been in this coupling ever since the mill was constructed. None of the employés who were called to the stand knew anything about it or the broken flange. Ordinary inspection would have discovered these defects, and ignorant negligence is equivalent to actual knowledge.

It needs no evidence to demonstrate that the projecting screw made contact with the collar exceedingly dangerous, and in a recent case we affirmed a verdict for damages for injuries caused by the broken flange of a "safety collar." Broadfoot v. Shreveport Cotton Oil Co., 111 La. 467, 35 South. 643.

The head of the set screw was three or four inches back of the edge of the log deck. The event demonstrated that it was near enough to catch the clothing of a man working in the narrow space 20 inches wide, called the "alley" or "the hole," in which the off-bearer usually stands. On the occasion of the accident plaintiff was kneeling in this alley, and was, according to his statement, engaged in raking with one hand sawdust and trash which had accumulated under the platform around the levers. There was a small covered hole in the floor of the mill immediately beneath the spot where plaintiff was kneeling, and, according to his testimony, he removed the cover in order to rake the sawdust into this hole. Two witnesses state that they saw plaintiff kneel in the alley and remove the cover. There is nothing in their testimony to impeach plaintiff's statement. The manager, however, testified that a few hours after the accident plaintiff told him how the accident occurred, and that plaintiff stated that he had his arm through the hole in question, and was engaged in adjusting the levers.

This testimony of the manager was denied by plaintiff, who asserted that he said that he was working in the "hole," meaning the "alley," at the time of the accident.

Beasley, the filer at the mill, called to see plaintiff during the night of the day of the accident, and had a conversation with him. Beasley testified that in response to a question plaintiff "remarked that he was working down in the hole, and had on his coat, and the gearing caught the back of his coat and just had him foul in an instant." This witness for defendant further stated that the space or alley in which the offbearer usually stands is, generally speaking, called "the hole."

In our appreciation of the case it makes little difference whether plaintiff was raking sawdust or had his arm through the hole adjusting his levers at the time of the accident.

The manager testified that it was no part of plaintiff's duty to remove the sawdust. Seven sawyers, all of whom had worked in defendant's mill, and some of whom were still in its employ, testified to the contrary.

The existence of the covered holes and its

use by plaintiff in adjusting his levers was known to the management, and no objections were made. The use of the hole for such purposes would not bring the body of the sawyer, except perhaps the point of one shoulder, appreciably nearer the collar.

While at work in this alley or hole, in a stooping position, with one knee on the floor, the coat of plaintiff was caught by the coupling. How this happened is not explained by the evidence. Some portion of the garment was forced beneath the edge of the log deck until it came within the sweep of the coupling. Obviously, the first contact was with the projecting set screw.

The argument for the defendant is thus epitomized in brief of counsel:

"It is clear that Mr. Smith did know the coupling was there; that he was adjusting the valves before the starting whistle blew, and that he could have stopped the rollers instantly before stooping down; that he raised the cover of the hole that he had wrongful cut in the floor and put his hand through it. When the nigger lever flew back, Smith either jumped or shoved away from it, and pushed his body and coat under and against the coupling."

Conceding that Smith knew or should have known the locality of the coupling, there is nothing to show that its extradangerous condition, resulting from the projection of the screw and the broken flange, was known to him. This condition does not seem to have been known to any one about the mill.

The statement that Smith was adjusting the valves at the time is an assumption that, to say the least of it, is not sustained by a preponderance of the evidence.

The only witness who states that the "nigger flew up" says that Smith "got down there to clean out," and raised the cover of the hole. The same witness says, "I don't know whether it flew back when he was caught or not."

The inference from the testimony of this witness is that Smith was "there" for the purpose of cleaning out the sawdust around the levers. If, while so employed, one of the levers flew up, and Smith instinctively shrank back until his coat was caught by the collar, we are not prepared to say that such action would amount to contributory negligence. The direct and immediate cause of the injury was the defective collar. If Smith had known of its dangerous condition, and still continued his work without protest, he might be held to have assumed the risk. But in the absence of such knowledge the burden of proof is on defendant to show contributory negligence. We do not think that the evidence shows that Smith did anything that a prudent sawyer would not have done under similar circumstances. In doing his work he was necessarily in close proximity to the collar. While thus engaged, some part of his coat must have been thrust, driven, or pushed within reach of the set screw or broken flange. Whether the causative force was the inward draft created by the rapid revolution of the shaft, or whether some portion of the garment was forced by Smith's movements beneath the edge of the log deck, we do not know. Smith had his side towards the shaft, and while kneeling on one knee his clothing was caught by the collar. As far as Smith was concerned, the result seems to have been purely accidental, and no specific act of negligence on his part is shown by the evidence. Smith had the right to assume that all the machinery about him was in good condition, and that his employer had furnished him with a reasonably safe place for his work. In the Broadfoot Case, 111 La. 467, 35 South. 643, one of the flanges of a safety collar was broken, and plaintiff's clothing was caught by the collar on the rapidly working shaft, with the result that he was whirled around and violently thrown a considerable distance. The court did not hold that the man so injured was guilty of contributory negligence because he incautiously touched the collar with his clothing. We make the following extracts from the opinion in that case:

"It is true that in thus passing he came nearer the safety collar before mentioned. We infer that, if it had not been broken, it would not have been dangerous. Its purpose is greater safety, but it is no longer safe when broken. * * * This collar would in all probability have been in good order if there had been any inspection made by the one in charge. The employer should have the machinery inspected from time to time. Under the circumstances here the master knew, or must be held to have known, of the defect. * * * With reference to the law bearing upon the issues, the 'weight of well-considered treatises on the subject set forth there is an implied promise by the master to make appliances safe. * * *
"It is the duty of the master to furnish his servants with safe implements and appliances."

In the case at bar the collar was not only broken, but had a projecting set screw, which was too long, and never intended for such a coupling. It is true that the collar was under the edge of the log deck, and the chances of employés coming in contact with it were remote; but the defendant cannot be excused, for that reason, for a breach of duty resulting in an unexpected injury to an employé. The object of the requirement that employers shall furnish safe appliances and keep them safe is to protect workmen against the chance or risk of being injured by defects which care and prudence can remedy or avoid.

The trial judge evidently gave credit to the testimony of plaintiff, and found him not guilty of contributory negligence.

We see no good and sufficient reasons for reversing his conclusions on the issues of negligence or for increasing the quantum of damages.

Judgment affirmed.