(52 South. 1021.)

No. 17,844.

HEBERT v. KINGSTON LUMBER CO.

(June 6, 1910.    Rehearing Denied June 28, 1910.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT (§ 256*)—INJURIES TO SERVANT—NEGLIGENCE—PETITION.

Where, in an action for injuries to a servant, the petition alleged particularly the manner and cause of the accident, and that it was through no fault of plaintiff, but through defendant's negligence in failing to furnish plaintiff a safe place to work, it was not fatally defective for failure to allege that the danger was hidden or was not known of or assumed by plaintiff, or that he was inexperienced or not properly warned.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–854; Dec. Dig. § 256.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—CARE REQUIRED.

While a master is not an insurer of the safety of his servant, he must use ordinary care to furnish the servant with a reasonably safe place in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 171–184; Dec. Dig. § 101, 102.*]

3. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—NEGLIGENCE.

In an action by an engineer in defendant's employ, injured by getting his foot caught in certain gearing under a passage platform on the way from one engine to another, *held*, that the platform was dangerous, and that defendant was negligent in permitting it to remain so.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

4. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK.

The danger from a defective platform on which plaintiff worked *held* not so manifest or clear that plaintiff would be held as a matter of law to have seen and assumed it.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 288.*]

5. DAMAGES (§ 132*) — PERSONAL INJURIES — AMOUNT ALLOWED.

Plaintiff, a stationary engineer in defendant's employ taking care of two engines, had his right heel caught in the cogwheels under a platform, and his foot was so badly crushed that his leg had to be amputated.   Plaintiff's sufferings were very great, and his earning capacity very greatly impaired, if not practically destroyed.   *Held*, that plaintiff should be allowed $6,000 damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

Land, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo;   T. F. Bell, Judge.

Action by Jude Hebert against the Kingston Lumber Company.   Judgment for defendant, and plaintiff appeals.   Reversed, and judgment for plaintiff.

Williamson & Crain, for appellant.   Thatcher & Welsh (Alexander & Wilkinson, of counsel), for appellee.

PROVOSTY, J.   Plaintiff, aged 34, was engineer at the sawmill of the defendant company.   Two engines were in his charge; and the only way for him to go from one to the other was over a three by four foot platform, or boxing, three feet high, between two upright posts three feet apart.   A six by six inch crossbeam at each end of the platform, about eighteen inches below the top of the platform, served as a step for going up or down.   This passageway was used by all the employés.   Under this platform were fast revolving cogwheels.   Upon the crossbeam, in the center of the space between the upright posts rested the slender iron shaft which ran the cogwheels.

A little more than a week after plaintiff had entered on this employment, his right heel got caught in the cogwheels, as he was stepping down from the platform, and his foot was so badly crushed that his leg had

to be amputated. "Q. Where? A. About the middle third about here (witness pointing to the leg)." In plaintiff's brief it is stated to have been between the knee and ankle.

The edge of the platform was on a perpendicular line with the inner side òf the crossbeam; and, for a space of 7½ inches, nothing intervened between the cogs and the foot of the person stepping down on the crossbeam. So that the situation was pretty much the same as if a staircase were constructed without risers, and with the outer edge of each tread on a perpendicular line with the inner edge of the tread below; that is to say, without the outer edge of each tread projecting over the inner edge of the tread below it, so that the heel of a person descending from one tread to the other would strike, not two inches or so from the inner edge of the tread, but, possibly, at the very inner edge itself of the tread, and the treads were six inches wide, instead of twelve or more, as usual, and were eighteen inches apart, instead of seven or eight or ten inches, as usual; and there were rapidly revolving cogwheels within, say, two inches of the inner edge of one of the treads.

The petition describes with great particularity and minuteness the manner and the cause of the accident, and alleges that it was through no fault of plaintiff's, but through the negligence of defendant in not furnishing plaintiff a safe place to work in. It does not contain, however, any allegation of the danger having been hidden; or of plaintiff's not having known of, and assumed, it; or of the plaintiff's having been inexperienced, or not properly warned; and because of the absence of these negative allegations defendant's learned counsel contend that the petition does not show a cause of action.

The petition has advised defendant of the nature of the demand and of the facts upon which it is founded; and our Code Prac. art. 172, does not require more. What more the

defendant would have any interest in being advised of for making its defense we cannot imagine. If petitions were required to be sworn to, there would be some utility in requiring them to negative all the facts whose existence might defeat the action; for then a plaintiff who should be unable to make under oath these negative allegations would be prevented from vexing defendant with the suit. But this verification of the petition is not required; and, rightly or wrongly, the practice has grown up of framing petitions with little regard to the plaintiff's ability to verify the allegations on the trial. This same question of whether a plaintiff is required, or not, to negative the facts whose existence would defeat his right of action, was considered by this court in the case of Buechner v. City of New Orleans, 112 La. 600, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, where it was held that a plaintiff need not allege the absence of contributory negligence on his part.

On the merits, the learned counsel for defendant argue that the master is not an insurer of the safety of his servant; but is held only to the exercise of ordinary care in discovering, and providing against, danger; and the learned counsel, with startling inconsistency, argue that the danger in this case was so evident that the plaintiff could not but have known of it and assumed it. The second alternative contention of the defendant is that if in stepping upon the crossbeam plaintiff had laid his foot to the left side of the iron shaft, instead of to the right side, he would have been safe, for then the cogs would have pushed his foot out instead of drawing it in; and that there having been a safe and an unsafe way, and the plaintiff having chosen the unsafe way, he cannot recover.

To our mind it is perfectly plain that, with the situation as described above, it was just a question of time when somebody's foot

would get caught. The only wonder is that the thing did not happen sooner. Waiving the incongruity of arguing that the danger was so hidden that defendant could not have discovered it in the course of the construction of the mill, or in the months, or years, that followed, but that it was so evident that plaintiff could not but have discovered it in the week's time of his employment, we will say that the danger did not lay in the fact that there were cogs under the platform (a thing perfectly obvious, and which everybody knew; in fact, the so-called platform was nothing more than a boxing for the cogwheels), but lay in the dangerous proximity of the cogs to the crossbeam used as a step, and in the absence of any boxing at that point. We think that ordinary care on the part of defendant would have revealed this danger; and it could have been removed entirely by directing some one about the mill to pick up a piece of board and nail it there. At the same time, we do not think that this danger was so manifest or glaring that plaintiff must be held to have seen it and assumed it.

While the master is not an insurer of the safety of his servant, he must use ordinary care in furnishing him a safe place to work in, and defendant has not done so in this case.

The foot of plaintiff was crushed to a pulp, and his sufferings were very great. His earning capacity is now very greatly impaired, if not practically destroyed. After consideration of all the circumstances of the case, we have concluded to fix the amount of the damages at $6,000.

It is therefore ordered, adjudged, and decreed that the plaintiff, Jude Hebert, have judgment against the defendant, the Kingston Lumber Company, in the sum of $6,000, with 5 per cent. per annum interest thereon from this date.

LAND, J., dissents.