(67 South. 12)

(No. 20108.)

COLLINS v. KRAUSE–MANAGAN LUMBER CO., Limited.

(Nov. 30, 1914. Rehearing Denied Jan. 11, 1915.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ☞97, 101, 102—SAFE PLACE OF WORK—DUTY OF MASTER.

The employer is bound to furnish his employés with a reasonably safe place for the performance of their work, and, if the place be unsafe, the remoteness of the danger will not excuse the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 163, 171, 174, 178–184, 192; Dec. Dig. ☞97, 101, 102.]

2. MASTER AND SERVANT ☞219, 235—INJURY TO SERVANT—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

Unless the danger be obvious, the defenses of assumption of risk and contributory negligence have no application, where an injured employé was engaged at the time in the performance of his work in the usual manner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624, 710–722; Dec. Dig. ☞219, 235.]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by Harry Collins against the Krause-Managan Lumber Company, Limited. From judgment for plaintiff, defendant appeals. Affirmed.

J. C. Henriques, of New Orleans, for appellant. Cline, Cline & Bell, of Lake Charles, for appellee.

LAND, J. This is a suit for damages for personal injuries sustained by the plaintiff in the course of his employment.

There was judgment in favor of the plaintiff for the sum of $7,500, and the defendant has appealed.

The petition represents that on December 9, 1912, the plaintiff was an employé of the defendant company in its sawmill, and in the performance of his duties proceeded to repair a hole in the slab conveyor; that in making such repairs he necessarily stood upon the floor of the mill on a slightly elevated board forming a part thereof; that while so engaged one or more boards on which he stood broke or became displaced by reason of being insecurely fastened; that immediately under the opening thus made were one or more cogwheels and machinery in rapid motion; that his left foot was precipitated through said opening, caught in the machinery, and the foot and a portion of the leg

crushed and mangled to such an extent as to necessitate their amputation.

The petition further represents that the accident was the result of the fault and negligence of the defendant company in failing to furnish a safe place within which he was required to perform his labors, and particularly in failing to cover securely the dangerous machinery under said place.

The petition further alleged that the said negligence of the defendant, and the injury resulting therefrom, have damaged the plaintiff in the sum of $15,000 for the loss of his foot and a portion of his leg, and for physical pain and suffering, and the further sum of $500 for medical and hospital expenses.

In an amended petition the plaintiff set forth that he was ordinarily employed as gang sawyer, but at the time of the injury was employed to make emergency repairs in the mill when notified by the foreman or by a certain signal, and was engaged in said work, as stated in the original petition, in answer to a signal given by a steam whistle; that he had no knowledge of the defect in the floor where he was standing when the injury occurred, and had never been warned of said defect, or of the danger on account of the same.

The answer admits the employment, accident, and injury, but denies the alleged negligence on the part of the defendant, and avers that the plaintiff's injuries were due solely to his own carelessness and fault.

The answer further pleads, in the alternative, contributory negligence and the assumption of the risk on the part of the plaintiff.

We have carefully perused the evidence, and concur in the findings of the trial judge.

[1] Plaintiff, prior to his employment by defendant, had worked about six months at a neighboring mill as a sawyer, and at the time of the accident had worked about six months at defendant's mill as gang sawyer and as one of two assistants to the millwright. Plaintiff is an intelligent young man, with but little education, and what he knew of mechanics had been learned in the rough school of the sawmill. Plaintiff may have been, in the language of the foreman, "a natural mechanical genius," but nevertheless his knowledge was limited to his experience in sawmill work. There is nothing to show that he was skilled in mill construction.

On the occasion in question, on a certain signal, the plaintiff left his work at the gang saw, and, going to another part of the mill, met one of the hands, who told him that the trouble was a break in the casing of a slab conveyor caused by a slab punching a hole through it. Plaintiff, after inspecting the hole, proceeded to get the necessary tools and material with which to close it. Directly opposite the conveyor, and a few inches from it, there was a board about five feet long one inch thick and ten inches wide, raised slightly above the floor, serving the purpose of a cover or casing over two cogwheels revolving immediately beneath. This board was elevated above the floor to allow the cogwheels space to run, and had cleats on three sides to hold it in position, but none on the fourth side, the furthest from the conveyor. While plaintiff was standing on this board, leaning over the conveyor to nail on the inside, the board slipped or tilted under plaintiff's foot, which dropped into the cogwheel, and was so badly crushed as to necessitate the amputation of the leg four inches above the ankle.

If the fourth side had been cleated the board would not, in all probability, have been moved by the pressure of plaintiff's foot. The board was left insecure for the sake of convenience in repairing or oiling the cogs, which, however, were generally oiled from beneath. Both safety and con-

venience could have been secured by the construction of a cover in the nature of a trapdoor.

We agree with our learned brother of the court below that the plan of construction was not a safe one, and that proper inspection would have disclosed the danger. It is no excuse that an accident was not likely to occur in the way that it did, or that the chances of employés having any occasion to stand on the board were remote, "because the object of the requirement that employers shall furnish appliances and keep them safe is to protect workmen against the chance or risk of being injured by defects which care or prudence can remedy or avoid." Smith v. Minden Lumber Co., 114 La. 1041, 38 South. 821.

[2] The alternative defense that the danger was obvious, and therefore the plaintiff assumed the risk of injury, is not well founded. Plaintiff testified that he had never examined the board, and knew nothing of its fastenings. The foreman did not perceive danger in the construction, and never had inspected the board or paid any particular attention to it. Not a single witness testified that there was apparent danger in stepping or standing on the board in question. The plaintiff saw no danger, and it is doubtful on the evidence whether he ever moved the board from its position over the hole. The danger was not apparent to the workmen in the mill, or even to the foreman, who represented the defendant.

In Faren v. Sellers & Co., 39 La. Ann. 1019, 3 South. 363, 4 Am. St. Rep. 256, this court said:

"The final contention of the defense is that Faren knew the danger, and assumed the risk of the work in which he was engaged. Without discussing the nice distinctions underlying the application of the principle referred to, it is sufficient to say that the servant is only bound to see patent defects, not latent ones; that mere knowledge of defects will not bar his recovery, unless accompanied by knowledge that the defects are dangerous; and that he has the right to rely upon the care and superior knowledge and judgment of his employer, and to act upon the assumption that the latter would not expose him to unnecessary risk, and has taken all proper precautions to guard him from danger."

Plaintiff was not guilty of contributory negligence in not stopping the mill to do the work, or in the manner of doing the same, because he had the right to act on the assumption that the defendant had taken proper precautions to make the board, as a part of the floor, safe to step or to stand upon. Smith v. Minden Lumber Co., 114 La. 1040, 38 South. 821.

Mr. Mitchell, the then foreman, testified that the board over the cogwheels was the only place on which the plaintiff could have stood to repair the hole in the slab conductor, and the work required the plaintiff to lean over the conductor in order to nail the piece of plank on the inside.

The same witness further testified that it was not usual to stop the mill to make such repairs as the plaintiff was working upon; that he knew of no other or better way in which the repairing could have been done than the one followed by the plaintiff; and that he himself would not have done the repairing in a different manner. The foreman did not realize the danger of the plaintiff's position on the board until after the accident. The fact that the danger was not obvious disposes of the plea of contributory negligence; and the main defense is that the master is not an insurer, and is not bound to anticipate and guard every possible danger.

We think that the master was bound to know that the board in question was not sufficiently secured to prevent its slipping or tilting, should one of his servants stand upon it in the performance of his work.

Judgment affirmed.