(70 South. 50)

No. 20107.

IDDLE v. HAMLER BOILER & TANK CO.

(Oct. 18, 1915.  On Application for Rehearing, Nov. 15, 1915.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ☞101, 102, 153, 163 — INJURY TO SERVANT — NEGLIGENCE — SAFE PLACE TO WORK—FAILURE TO WARN.

An employer was guilty of negligence: (1) In assigning two inexperienced employés to a job which, for its safe and proper execution, required, and had theretofore been executed by three, one of whom was a man of experience; (2) in failing to provide such employés with a reasonably safe place to work; (3) in failing to instruct and warn an employé, wholly without experience in the work to which he was assigned and in the use of the implement with which he was furnished, as to the danger by which he was threatened; and, as by reason of such negligence, the employé was injured, the employer is liable in damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192, 314–317, 328–330; Dec. Dig. ☞101, 102, 153, 163.]

2. DAMAGES ☞132—PERSONAL INJURIES — EXCESSIVE RECOVERY.

Where, by reason of the negligence of his employer, an able-bodied working man, 32 years of age, having a wife and children, was so crippled in both arms and a leg that he will never again be able to do manual labor, and will have difficulty in even feeding and dressing himself, an award, in damages, of $15,000 is not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ☞132.]

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; P. E. Edrington, Judge.

Action by Joseph Iddle against the Hamler Boiler & Tank Company. From a judgment for plaintiff, defendant appeals. Affirmed, and rehearing denied.

Edward Rightor and James Legendre, both of New Orleans, for appellant.  Robert E. O'Connor and Prentice E. Edrington, Jr., both of New Orleans, for appellee.

Statement of the Case.

MONROE, C. J.  Defendant prosecutes this appeal from a judgment awarding plaintiff 138 LA.—4

$15,000, as damages for personal injuries sustained by him while engaged in certain work to which he was assigned in the course of his employment by it, and which injuries he attributes to defendant's negligence.  There was considerable preliminary skirmishing before the merits of the case were reached in the district court, and defendant's counsel reargue at some length, in the brief herein filed, the questions which were then involved, but they were disposed of by the decision of this court upon their application for writs of certiorari and prohibition, reported in the case bearing the above title.  132 La. 476, 61 South. 532.

Upon the merits, the facts established by the evidence are as follows:

Plaintiff was employed, prior to January (say) 23, 1911, as water tender and foreman, upon a plantation, but about the date mentioned, entered the service of defendant and was set to work on the ground, assisting in the fitting up of iron tanks, after which, and perhaps 10 days before the accident by which he was injured, he was engaged in assisting three men, Kuhlo, Lane, and Bauman, in erecting one of the tanks, which was to be 48 feet in diameter by 40 feet in height, and was being built of plates 5x10 feet in width and length, a quarter of an inch thick, and weighing 900 or 1,000 pounds.  Kuhlo was foreman of the job, and was operating a donkey engine (about 50 feet from the tank), by means of which the plates were hoisted into position.  Lane, an experienced man, was on a scaffold, upon the inside of the tank.  Bauman, a laborer, was his helper, and was working with him.  Plaintiff, also a laborer, worked on the ground, straightening out the cable, and, when the plate reached its position, joined Lane and Bauman and helped them to bolt the lower edge of the hoisted plate to the upper edge of the plate already in place, his function being principally to screw the nuts upon the ends of the bolts which were passed through perforations in

the edges of the plates, and Kuhle, at times, left his engine, when a plate had been hoisted into position, and lent assistance to Lane and Bauman. Plaintiff had never worked on a scaffold until February 28th, when he gave assistance such as is mentioned above. The scaffold in question extended around the inside of the tank, at an elevation, on the day of the accident, of about 25 feet, and the floor was ordinarily two planks, or 24 inches, in width. During the morning of March 10, 1911, plaintiff worked as usual, on the ground, and then, screwing nuts on bolts, on the scaffold; but a man named Landry, who had been engaged in heating rivets, quit his work (on account of indisposition) and Kuhle sent Lane to take his place, and plaintiff to take the place of Lane, with Bauman, in a kind of work that he had never before attempted, requiring the use of an implement that he had never before handled, and, as it happened, upon a section of the scaffold that was only one plank (or 12 inches) wide; that is to say, Lane and Bauman, working together, would stand, respectively, at the ends of a plate, as it was hoisted, approximately, into position, and by means of "a piece of iron about a foot and a half long, tapering out at one end and flattened out at the other end" (called a "spud bar"), and the pointed end of which would be inserted in one of the perforations in the swinging plate, would pull it to the tank and adjust its lower edge to the upper edge of the plate, in place, so that it could be bolted on. The danger of the work consisted in the fact that the point of the bar was apt to slip out of the perforation and the workman to lose his balance and fall off the scaffold; and that is what happened to plaintiff, on his first attempt to use the bar. One of the witnesses testifies that there was some wind, and that the plate that plaintiff was attempting to operate on was probably blown a little away from him, breaking the precarious hold of the spud bar, and causing him to lose his balance, which, by reason of the narrow footing afforded by the single plank upon which he was standing, he was unable, and had but little chance, to recover. He fell, it seems, upon a lot of iron junk, and was permanently crippled and disfigured. His injuries are described by the surgeons who attended him, and between whom there is little or no difference of opinion, as follows:

Both bones of the right elbow were fractured, and there is resulting ankylosis of the joint and injury to the tendons which render the arm and hand almost useless, since he is unable to close his hand or to reach his face with it, and hence is unable to use it in feeding or clothing himself or combing his hair; he received a "Collis" fracture of the left wrist, which, with—

"the bony excrement * * * and other original traumatism, has caused a stiffening of the tendons, which renders his hand useless to do ordinary work; he cannot close his hand in such a manner as to pick up articles and do ordinary work."

The femur of the right leg was fractured; the leg has been shortened about 2½ inches; and, two years after the accident, he was still on crutches, with no very bright prospect of getting rid of them. He had two teeth knocked out, and was badly disfigured about the face by cuts, one of which required 8 or 10 stitches to bring it together. And he suffered from a number of contusions of a comparatively minor character, but from which he had not altogether recovered when the case was tried. Three surgeons testified (two called by plaintiff and one by defendant), and they concurred in the opinion that he will not again be able to do any hard manual labor; and the impression that we get is that he will always find it difficult, if not impossible, to dress and feed himself. At the time of the accident he was 32 years of age, had a wife and three children (one of whom afterwards died), and was in good health. There is no conflict, of any importance, in the testimony. Kuhle says that he

gave plaintiff instructions as to the handling of the "spud bar." Plaintiff says that he did not; and plaintiff's testimony is corroborated by the surrounding circumstances. The testimony, to the effect that the handling of a "spud bar," by an inexperienced person, situated as was the plaintiff, is dangerous, is uncontradicted.

### Opinion.

[1, 2] Our conclusions from the facts thus found are that defendant was guilty of negligence: (1) In assigning two inexperienced men to a job which, for its safe and proper execution, required, and had theretofore been executed by, three, one of whom was a man of experience; (2) in failing to provide the men with a safe place to work; (3) in failing to instruct the plaintiff as to the danger of the work to which he was assigned. Hill v. Lumber Co., 108 La. 162, 32 South. 372, 58 L. R. A. 346; Gualden v. Railway Co., 106 La. 409, 30 South. 889; Broadfoot v. Shreveport Cotton Oil Co., 111 La. 467, 35 South. 643; Taylor v. E. C. Palmer & Co., Ltd., 121 La. 710, 46 South. 703; Whitworth v. South Arkansas Lbr. Co., 121 La. 894, 46 South. 912; Hebert v. Kingston Lbr. Co., 126 La. 775, 52 South. 1021; James v. Rapides Lbr. Co., 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 33. We further conclude that it was by reason of that negligence that plaintiff received the injuries of which he complains, and hence that defendant is liable in damages therefor. The amount awarded by the district court is not, in our opinion, excessive, in view of the character and effect of the injuries, but we find no sufficient reasons for increasing it.

The judgment appealed from is therefore affirmed.

### On Application for Rehearing.

PER CURIAM. In their application for a rehearing, counsel for appellant complain of our omission to pass upon their plea to the jurisdiction, which was an attack on the constitutionality of Act No. 54 of 1904, providing for service of citation on foreign corporations doing business in this state. This question was disposed of in the application for writs of certiorari and prohibition in this case. See Iddle v. Hamler Boiler & Tank Co., 132 La. 476, 61 South. 532, where the judgment of the district court, declaring that this plea to the jurisdiction was waived by other pleadings filed and disposed of with the plea to the jurisdiction, was affirmed by this court. That decree became final on the 31st of March, 1913, and we deemed it unnecessary to reconsider the plea to the jurisdiction on this appeal from the final judgment of the district court. The application for a rehearing is denied.