

Mrs N.W. Granberry

vs

J. Emile Jarrau

**8845** No. 8845

Charles F. Claiborne, Judge.

October 50ᵗʰ 1922

*Judge Bell dissents*

NANCY W. GRANBERRY

VS
No. 8845

J. EMILE JARREAU, Appellant.

Charles F. Claiborne, Judge.

This a a damage suit for personel injuries. The plaintiff alleges that while she was crossing Common Street, she was knocked down and injured by an automobile driven by the defendant; that she suffered the following injuries: 1st Two bones of the right foot broken; 2nd the left ankle severely sprained: 3rd her hips bruised; 4th her back wrenched; and 5th a nervous shock from which she has not yet receovered; that at the time of the accident she was employed as a file clerk at a salary of $80.00 per month; that she has not been able to do any kind of work since the accident four months before the filing of her petition. She Claims tha following damages;

| | |
|---|---|
| 1st Loss of four months salary at $80 | $320.00 |
| 2nd Loss of her earning capacity | 5000.00 |
| 3rd Pain and anguish, present and future | 3000.00 . |
| 4th Humiliation of having to limp the balance of her life. | 5000.00 |
| Making a total of | $ 13320.00 |

Defendant denied all of plaintiff's allegations and averred that the accident and injury to the plaintiff resulted from her negligence.

There was judgment for the plaintiff for $5000 and defendant has appealed.

The facts of the accident are as follows:

On January 17th 1922 between four and five O'Clock in the evening, the plaintiff was walking on the sidewalk of Carondelet Street nearest the Lake going towards Canal Street;

224

she was in company with two other ladies;Miss Murphy was on the right,plaintiff was in the center,and Miss Moran was on the left; when they reached Common Street,they proceeded to cross it;just about that moment the defendant driving a Ford car,was proceeding down Carondelet in the same direction in which the plaintiff was walking";when he reached Common Street,he turned to his left towards the Lake in order to drive down Common Street;in doing so he ran down plaintiff and one of her companions and a third lady who was stepping on the down town sidewalk of Common street.

There is not much conflict in the testimony concerning the manner in which the accident happened.

Miss Moran testifies:

Q.What happened while you were crossing Common Street?
A.We first started over;it was time for the pedestrians to pass people were in front of us,and we got more than three quarters over when an automobile came down very quickly and it knocked down Mrs Cranberry and Miss Murphy;it didn't touch me,and the machine turned and went on the sidewalk.
Q. What warning or notice did you have that an automobile was coming there ?
A. We didn't have any notice;didn't have to think-
Q. What I want to find out is,was your face back or side,to the automobile ?
A. My back was to the automobile.

Miss Ethel Murphy says:

" That when they reached the corner of Common and Carondelet they proceeded to cross Common Street;while in the middle of the Street Mr Jarrau'$ automobile came in from Carondelet Street, coming from uptown going in the same direction as us and hit me on the wrist and threw me back,and then I saw it run over Mrs Cranberry's foot,the auto ran over her foot."they had no warning at all,that the automobile was going to turn into Common Street;no horn was blown;there were other pedestrians passing

in front of them; after the accident the auto ran up on the side-
walk into the empty lot and stopped; six or eight feet from there.
the left hand fender going to the lake hit her right arm; the auto
stopped six or eight feet from the point it struck her.

Miss Freuil testifies that she was coming down Carondelet
street ,and that she had almost crossed Common Street when the
accident occurred; that she heard no sound of an automobile horn ,
positively none, that if any had been sounded she would have heard
it; there were other pedestrians crossing the street; the auto hit
the heel of her shoe when she was about stepping upon the side-
walk of Common Street,and nearly threw her down; is positive she
heard no horn; would have heard it if sounded, cannot be mistaken.

The plaintiff testifies:
She had no notice or warning that the auto was going to hit her,
positively none; the automobile came from behind her, on Carondelet
going towards Canal Street.

On behalf of the defendant, the traffic officer says
he did not see the accident; his attention was attracted by a
woman's scream; he turned around and saw the plaintiff lying in
the street; defendant's auto was on the sidewalk at an angle
of forty-five degrees.

The defendant testifies that he is a dealer in automo-
biles; that on the day of the accident he was driving a Ford Sedan;
that he was driving down Carondelet Street; when he reached
Common Street the traffic was going from the River to the Lake
so he came to a dead stop for possibly twenty seconds until he
received the signal from the traffic officer to proceed: there
were a great many pedestrians at that time going down Carondelet
towards Canal Street on the Lake side and on account of the crowd
he drove very slowly and blew his horn; as he was proceeding in
the direction of the lake there were two or three ladies in front
of his car hesitating to cross; they steped backwards and forward
until his machine got so close to them, and seeing them in front

226

of him, and in order to avoid an accident he swerved his car to the right and made his way on the sidewalk on Common Street; then he got out of his car and walked back six or seven feet and saw the plaintiff supported by two men; when the plaintiff was crossing Common Street she was looking down Canal Street; there were three ladies talking together; he does not know that his car came in contact with the plaintiff; he had no knowledge of it then or now; he immediately went to the plaintiff and took her in his auto up to the Hibernia Bank Building; while traveling at six or eight miles an hour he could stop his auto within a foot.

There is no other testimony explaining the accident. To our satisfaction, it establishes that while three ladies were quietly crossing the intersection of Common Street unaware of any danger, the defendant, approaching them from the rear or at best from the side, and with full knowledge of their presence, drove his car against them, struck the wrist of one of them knocking down another and ran over her and such was the rapidity of his course hit the heel of a third, and jumped upon the sidewalk leaving the plaintiff lying upon the ground six feet behind his car. But the defendant urges that the plaintiff was negligent; and contributed to the accident; that she threw herself in the way of his car, and that before crossing Common Street, she should have looked up Carondelet Street to see whether any car was coming down and turning into Common Street. We think not. The plaintiff had satisfied the law when she looked up Common Street which is a one way street running towards the Lake. If she had looked up Carondelet Street and seen a car coming down, nothinh would have indicated to her, nor would she have had any reason to believe that the car would turn into Common Street. She would have been justified in assuming that the car would have continued its course down Carondelet Street; and in that manner she would have had no reason to try and avoid it 8 Ct. App. 341 .

It was plainly defendants duty in turning from Carondelet into Common Street to see that no pedestrians were on Common Street

227

at the customary crossing.

Pedestrians have equal rights of way with vehicles on Streets-18 Am.and Eng.Enc Law 2d Ed 585 1 st Ed.964-Elliott on Roads 622 - 37 Cyc.273.275-28 Cyc 912 - 113 N.Y. App.Div 808-99 N.Y Supp 1091 -42 Me.332-104 N.E.457-50 A 1164.

A greater degree of care must be exercised by one using a dangerous instrument 125 La 944 .

One using upon a public street a death dealing machine like an automobile,must be duly observant 126 La 790-141 La 686 (695 ) Ct.App.No.6769.

But assuming that the plaintiff and her two companions were negligent and contributed to the accident,that alone does not constitute a defence.There are two elements essential to such a defence; 1st that plaintiff was negligent and 2nd that the accident was unavoidable on the part of the defendant by the exercise of reasonable care.Defendant saw those three ladies,as he says,hesitating to cross,backing and filling and he apprehended an accident.He could have prevented the accident by stopping or at least checking.The last clear chance was with him. Negligence of a plaintiff will not exonerate a defendant who by the exercise of reasonable care could have avoidded the accident.The leading case upon the question in our jurisprudence is perhaps Mc.Clanahan vs R.R.D.111 La 781.

" While plaintiff was negligent in attempting to cross the defendants' track at a sharp curve without stopping to look and listen at the proper time and place,the Company will be held liable when the evidence shows that the engineer saw the danger in time to avoid the accident by sounding the whistle or applying the brakes" Ross Vs Sibly 116 La 789 .

See also 19 A 304-46 A 1543-49 A 491-51 A 1689 ( 1693 ) 52 A 245 (248 ) 105 La 229 -418 -106 La.236-109 La 48-125 La 777 141 La 686 -129 La 142 — *128 La 933-137 La 121-* *9 Ct App 351- 648 —* To the same effect are the common law authorities

228

Held,that the defendant had no ground of exception to the following instructions:

"6- That contributory negligence of the plaintiff would not prevent him from recovering if the defendant might,by the exercise of reasonable care and prudence,have avoided the consequences of the plaintiff's negligence." 139 U.S. 551 (558) and authorities 13 How.101-109-144 U.S.429-43 N.Y.75.82-6 Gray 64.72-29 Md.420-156 Pac.51-L.R.A.1916 E.58-898-7 A and E.E.Law 2 ED.P.387-2 Supp id 63 Shearman and R. on Neg.p.99-e 1 Thompson on NeG. S 239,242 29 Cyc p.641 F 652 (d) 655 F.

The English authorities are the same."Though a plaintiff may have been guilty of negligence and although that negligence may in fact have contributed to the accident which is the subject of the action,yet if the defendant could in the result,by the exercise of ordinary care and diligence,have avoided the mischief which happened,the plaintiff's negligence will not excuse him. Radley vs RRD.Appeal cases 754-18 English Reports ( Moaks notes ) 37 (41)

**II** The further defence is made that the plaintiff cannot recover because immediately after the accident,while driving in defendants' car to Dr Webb's office,the plaintiff declared in the presence of the defendant and of the traffic officer and of the Misses Murphy and Evans " that the accident was not his fault."

The defendant swears that she said so;the plaintiff denies it.The traffic officer answers: Yes she said then,that she didn't think that Mr Jarreau ran into her purposely,and that it was not his fault something to that effect."

Miss Evans,a witness for defendant,whom she calls"Emile" testifies that the plaintiff said:Why it was not your fault at all Mr Jarrau I lost my head and Zigzagged across the street.

Miss Murphy denies that plaintiff said so.

Defendant and his wife also testify that a few days after

the accident they called on the plaintiff who repeated that "it was not Mr Jarrau's fault;that she was getting along allright not to worry,the accident was unavoidable."

The plaintiff denies this statement and she is corroborated by Mrs Koehle who was present during the visit paid by the defendant and his wife to the plaintiff and who heard all the conversation between them.

She says that she did not hear plaintiff tell Mr and Mrs Jarrau that the accident was not due to Mr Jarrau's fault;that she told him that she knew he didn't do it intentionally."

In the presence of the conflict of testimony we cannot hold that defendant has established this branch of his defence.

Such a defence must be established with absolute certainty. 48 A 832-1 Woods 306 savin vs Juno-50 A 468

III There remains the question of amount of damages.The law does not pretend to allow to a plaintiff such an amount as will compensate him for the damage done to him by the defendant.As was well said by plaintiffs counsel in argument,no amount will compensate one for the loss of a foot or of a hand,or of an eye, for it is an irreparable injury;or if any attempt is made at compensation,the amount might ruin the defendant,which is not the object of the law.

In the case of Vincent vs Morgan Railroad 140 La 1027 decided in 1917 the Court said ı Neither the person originally injured nor those who succees to his rights with respect to the injury,and who acquire rights of thir own with respect to the injury inflicted upon them by his death,are entitled to recover anything more in the way of damages than adequate indemnity for the injury and loss inflicted upon him and them in mind,body or estate,there being no provision in our system of laws which authorizes the cumulation in such cases of a civil action for the redress or a private wrong with a quasi,criminal prosecution for the assumed benefit of the public,but the sole purpose and principal object of which is to increase the adequate indemnity

230

recovered by the plaintiff as actual and compensatory damages by the addition of a pecuniary penalty in the form or exemplary primitive, or vindictive damages." Also Dunson vs Baker 144 La. 167 -428 -586-146 La 678-10 A 33.

Prior to the above decisions Courts were in the habit of awarding exemplary or punitive damages.

For that reason, in examining those decisions, we must eliminate those damages in fixing the amount to be allowed by us. While not ignoring plaintiff's testimony, we must give greater weight to the opinion of Dr O'Ferrall as to the extent and course consequences of plaintiffs' injury. He was employed by the plaintiff to treat her injuries, he is an orthopedic surgeon, he treats diseases of the bones and joints; he is a graduate of Tulane University; was an interne in the Bellevne Hospital of New York, Massachusetts General Hospital in Boston, Senior Orthopedic Surgeon at Touro Infirmary, Chief of the Orthopedic service at the Charity Hospital and the New Orleans Dispendary for women, was a year in charge of the orthopedic service in Europe, is a member of the American college of Surgeons of the Louisiana State Medical Society and of the Orleans Parish Medical Society; he treated plaintiff for six weeks or two months; saw her between two weeks and a month ago; he treated her exclusively for her right foot; was not asked to treat her back, made no complaint of her hip, nor of nervous shock; he saw her seven or eight weeks after the injury; at that time her right foot was swollen and there was some pain over the top of the foot on pressure; he took an ex-ray of her foot which showed a small fracture of a bone and a slight dislocation of another bone; he strapped her foot up, and put a pad for support and upon her return to his office she seemed to think it was better, and in the course of three or four visits to his office the swelling had largely disappeared and she was able to put on her normal shoe, at first she was wearing a shoe that was cut, her condition has progressed towards a normal foot; the last time he saw her, she was having comparatively little pain, but was still limping; she came in after an

absence of several weeks and he told her foot was progressing
satisfactorily and he thought it would eventually be entirely
well,the pad was to relieve plaintiff's foot;she has a slight
"pronation " Known by the laity as a flat foot which necessarily
gave pain before the accident and greater pain after the accident,
he thinks she should in the ordinary course of events make a
rapid recovery;and her foot would be the same as before the acci-
dent;he thinks she will be perfectly well in six months,it is
not a permanent injury. Dr Levy says " That this lady's particular
flat foot was not caused by the accident but was due to other
causes over.which we have no control ".The plaintiff testifies
that in July last she went to the coast;she went in bathing and
could not.walk in the sand;her feet became so painful and sore
that she had to crawl on her knees and hands;she has worked all
her life;she can fill other employments than file clerk;she is
a book keeper,she taught school for twelve years;she was three
years in high school.

The accident occurred in January; Dr O'Ferrall testified
in July he said plaintiff's foot would be well in six months.

The plaintiff has not established to our satisfaction
that she injured her left foot,nor her hip,nor her back,nor that
she suffered a nervous shock.Nor do we think that the accident
has deprived her of her ability to work in other lines than as
a file clerk, or that it has destroyed her earning capacity in
other spheres, or that the injuries received by her are permanent.

With a view of being in line with the Supreme Court on
the question of the amount of damages allowed for injuries of the
same extent as those suffered by the plaintiff we have examined
the following authorities and from them we gather that a sum
not exceeding two thousand dollars is usually granted a plaintiff
even when in similar cases the injury is permanent.5 A 703-10 A 88
15 A 703-17 A 166-19 La.414 20 A 25-35 A 13-751 - 36 A 966-37 A 27

232

38 A 111-39 A 649-40 A 467- 42 A 983-47 A 1107 -1440 -49 A 1465 52 A 1133-1153-1599-104 La 345 -634-105 La 451-106 La 170-409 108 La 423 -109 La 396-525-110 La 399-534-741-113 La 1040-114 La 802-1035-115 La 249-116 La 789-926-1033-117 La 1094-118 La 530 119 La 336-344-537-121 La 909-122 La 441-606-128 La 933-111 La. 467-126 La 634-145 La 323-435-734-129 La 788 -139 La 616 -140 La 529-1019-143 La 269-148 La 88 -134 La 863.

More especially the following 43 A 295-50 A 280-441-1163 51 A 178-52 A 1109-2153-41 A 624-104 La 411-105 La 271-111 La 467 114 La 1035-117 La 911 -119 La 537-121 La 231-242-126 La 568 128 La 933-130 La 39-139 La 616-92 So.Rep.58-142 La 403.

In Jones vs Tremont 139 La 631 the Court said" While there is no standard for the measurement of damages in a case like this there should be some regard for uniformity" also 125 La.1088 (1099 )

In the three cases quoted by the plaintiff where heavy damages were awarded the first was for the amputation of a child's right arm the second for permanent injury to both hands rendering them useless,fracture of the jaw and loss of all teeth,rupture of the drum of one ear with loss of hearing and the other injuries; the third 150 La 61 the plaintiff suffered a curvature of the spine,is crippled for life and permantly incapacitated to earn a livelihood;suffered much pain and her power of locomotion is greatly impaired".

It was only in cases of excisive injury and pain with reduced capacity to earn a living,or where the plaintiff had lost a leg, or an arm or his sight,or hearing that a larger sum than two thousand dollars was allowed,as was decided in the cases quoted by the plaintiff.

Upon the argument of the case plaintiff offered to file her affidavit statting that her condition had not improved and was becoming worse and praying that the case be remanded to take testimony on the question.

The code of practice provides Art.894 " The Supreme
Court shall receive no new evidence even through it may have
been discovered since the judgment below except in the cases
hereafter expressed."

In the case of Turner vs RRD. 37 A 648 (650) the Court
said:"Courts must be very cautious in dealing with elements of
prospective damages,which should never be allowed but in clear
cases,supported by tangible proof,and in a measure independent
of expert testimony."

The above article 894 must be interpreted in conjunction
with article C.P.906 which authorizes the appellate Court to
remand a case in all cases when the ends of justice require it.
But such relief is granted only in extreme cases,and where other-
wise it is evident that either party would fail to receive what
he was entitled to,if all the facts had been properly presented
and the law fairly applied.But in this case we feel able to grant
the plaintiff all the relief she is entitled to according to the
record before us.In 119 La 349 the Supreme Court said:
"We have noted that defendant moved for an order remanding the
case on the ground of newly discovered evidence.It has had its
day in court.It is its misforture if it did not discover the
evidence in time.There must be an end to litigation.A remanding
order at this time in this case would find support in none of the
books."

It is therefore ordered that the judgment herein be
reduced from Five Thousand dollars to Two Thousand dollars,and
that as thus amended,it be affirmed,the plaintiff to pay the costs
of appeal

October 30th 1922